SISSON (GREENE v.). See Case No. 5,768.

---

## Case No. 12,913.

### SISSON et al. v. SEABURY.

[1 Sumn. 235.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1832.

WILLS—DEVISE—NATURE OF ESTATE—REMAINDERS —COLLATERAL WARRANTY.

1. A devise to "A. and to his male children, lawfully begotten of his body, and their heirs for ever, to be equally divided amongst them and their heirs for ever," passes a life estate to A., with a contingent remainder in fee to his children he having, at the making of the will, no children.

[Cited in Doe v. Considine, 6 Wall. (73 U. S.) 477.]

[Cited in Biggs v. McCarty, 86 Ind. 357; Burges v. Thompson, 13 R. I. 719; Canedy v. Haskins, 13 Metc. (Mass.) 401; Hunt v. Hall, 37 Me. 366; Malcolm v. Malcolm, 3 Cush. 482. Cited in brief in Moon v. Stone, 19 Grat. (Va.) 205; Richardson v. Paige, 54 Vt. 375.]

2. The statute of 4 & 5 Anne, c. 16, respecting collateral warranty, &c., has been adopted in Rhode Island.

[Cited in Russ v. Alpaugh, 118 Mass. 373.]

Ejectment [by Philip Sisson and others against Cornelius Seabury] for land in Tiverton, Rhode Island. Plea, general issue.

The parties agreed to a special statement of facts as follows: "On the 20th day of August, A. D. 1775, Thomas Sisson, then of Tiverton, Rhode Island, being of sound mind and competent to make a will, made and duly executed his last will and testament, in the words and figures, as set out in the certified copy thereof marked A, herewith filed as part of this agreement, and admitted as sufficient evidence of the said will, and the probate thereof; and the said Thomas died between the day last named and the 20th day of January, A. D. 1777, on which day the said will was duly proved, approved, and ordered to be recorded by the court of probate of the said town of Tiverton, as and for the last will and testament of the said Thomas, then deceased, and took effect as such; and the

---

[1] [Reported by Charles Sumner, Esq.]

said will and probate are in all respects valid and effectual. Philip Sisson, the grandson of said Thomas, named as a devisee in said will, was at the time of the execution of said will, under the age of twenty-one years, and, at that time and also at the time of the probate of said will, had had no children, and had never been married; but after the decease of said Thomas, the said Philip went into possession of the lands, tenements, and appurtenances devised to him in and by said will, under and according to said will, and the terms of the devise and devises to him therein; the same lands so devised to him including the premises demanded in this suit, as well as other lands lying in Massachusetts; and remained in possession of the premises demanded in this suit (being part of the lands so devised as aforesaid to him), under and by virtue of said will and devise, until the 29th day of March, A. D. 1814, on which day he duly made, executed, and delivered to the defendant the deed marked B, herewith filed, and agreed to be a part of this statement, and duly and legally acknowledged the same in manner as appears thereon, under which deed the defendant went into possession of the demanded premises, and has remained ever since, and still is, in possession thereof. The said Philip Sisson, in January, A. D. 1785, was lawfully married to Susannah Bowen, now Susannah Sisson, by whom he had the following named children, male and female, of his body lawfully begotten in wedlock, namely: Elizabeth, a daughter, since married to Jabez Howland; Hannah, a daughter, since married to Peleg Taber; Thomas, a son; Holden, a son; Susan, a daughter, since married to John Tripp; Abraham, a son; Nathan, a son; Coox, a son; Henry Wilbur, a son; Lydia, a daughter, since married to Timothy Ingersoll; Abigail, a daughter, since married to Jacob Lyons; Pamela A., a daughter, since married to Asa M. Lucas; Philip, a son; and Phebe, a daughter, since married to Ezekiel S. Russell; all which said children of said Philip and Susannah, excepting the said son Nathan, and all which said husbands of said female children, are the plaintiffs in this suit, and now living. The said Nathan died in August, A. D. 1818, intestate and without issue, leaving his said brothers and sisters his heirs at law. The said plaintiffs and the defendant are citizens of the several states, and reside in the several places, as stated in the plaintiffs' declaration: and the said children of the said Philip Sisson were born at the several times mentioned in the deposition of said Susannah, marked C, which is admitted, and is to be taken, as part of this statement, and all the matters stated therein are agreed to be true. The said deed to the defendant comprises, not only the land demanded in this suit, but a part also of the lands so devised to said Philip, lying in Massachusetts. The said Philip Sisson, named in said will, and father of the

children and plaintiffs aforesaid, died in Indiana, in September, A. D. 1817; and since his decease, the said premises were demanded of said defendant, by Thomas Sisson, one of the plaintiffs in this suit, on the ground, that the said Philip, deceased, had but a life estate therein, and claiming title by way of remainder, under said will." [2]

Tillinghast & Whipple, for plaintiffs.
Mr. Hunter and R. W. Greene, for defendant.[3]

[Before STORY, Circuit Justice, and PITMAN, District Judge.]

STORY, Circuit Justice. The principal question in this case turns upon a devise in the will of Thomas Sisson, made in 1775. It is in the following words: "Item, I give and bequeath to my loving grandson, Philip Sisson, all my homestead farm and housing thereon standing, lying part in said Tiverton, and part in the township of Dartmouth, in the province of Massachusetts Bay, with all my other lands, and salt meadows, and sedge flats in said Dartmouth, to him, my said grandson Philip Sisson, and to his male children lawfully begotten of his body, and their heirs for ever, to be equally divided amongst them and their heirs for ever." The testator died in 1777, leaving the said Philip Sisson a minor under age (the argument says eleven years old only), without children, not then having been married. The question is, what estate he took under the will. If he took an estate tail, it has been docked by a conveyance duly made by him according to the statute of Rhode Island for barring estates tail. If he took an estate for life only, and his children, afterwards born, took a fee in remainder then the plaintiffs are entitled to recover the premises, unless they are barred by the warranty of their ancestor in the conveyance, by which he docked the entail.

The case has been very thoroughly argued; and is certainly not without its difficulties, when viewed in connexion with the authorities. The general rule is, that, in construing wills, the intention of the testator is the pole star to guide and govern the court. But this rule carries us but a very little way; for the inquiry still remains, what that intention is, and how it is to be ascertained. Now, the intention is to be sought for, not

only by consulting the words of the will, and the posture of the facts, which must have had an influence, when it was framed, and constituting, if one may so say, a part of the res gestæ; but also by the rules of interpretation, in some measure artificial, which have been from time to time adopted by courts of law for the ascertainment of the intention. Where such rules have long prevailed, it would produce infinite mischiefs to depart from them; for it would necessarily loosen the whole foundation of the titles to real estate, and unsettle all that constitutes safety or security in the administration of the law; I mean, the adherence to precedents. And then, again, not only rules of interpretation, but expositions of certain phrases, found in certain connexions in wills, are entitled to great influence in deciding other cases similarly circumstanced. In short, precedents constitute the material basis of this department of the law, as well as of others, in regard to the mode of searching out, and fixing the intention of the testator. So that it may be truly affirmed, though it seems, at first view, somewhat paradoxical, that the intention, as expounded by courts of law, is, or may be, very often quite different from the private intention and understanding of the testator.

The difficulty of construing wills in any satisfactory manner, renders this one of the most perplexing branches of the law. The cases almost overwhelm us at every step of our progress; and any attempts even to classify them, much less to harmonize them, is full of the most perilous labor. Lord Eldon has observed, that the mind is overpowered by their multitudes, and the subtilty of the distinctions between them. Jesson v. Wright, 2 Bligh, 50. To lay down any positive and definite rules of universal application in the interpretation of wills, must continue to be, as it has been, a task, if not utterly hopeless, at least of extraordinary difficulty. The unavoidable imperfections of human language, the obscure and often inconsistent expressions of intention, and the utter inability of the human mind to foresee the possible combinations of events, must for ever afford an ample field for doubt and discussion, so long as testators are at liberty to frame their wills in their own way, without being tied down to any technical and formal language. It ought not, therefore, to surprise us, that in this branch of the law the words used should present an infinite variety of combinations, and thus involve an infinite variety of shades of meaning, as well as of decision.

In considering the present case, it may be well, first, to look at the words of the devise, and ascertain, if we can, what is their natural and appropriate meaning. Having done so, we may then endeavor to ascertain, if the authorities present any solid ground for a different construction. If they fortify, rather than repel the natural import of the

[2] The papers herein referred to, marked A, B, C, are omitted, they not being important to the true understanding of the decision.

[3] The very learned arguments in this case were in writing, and the reporter was desirous of presenting an abstract of them; but, residing at a distance from the counsel, he was unable to procure, probably on account of some miscarriage, the arguments on one side, though those on the other side were politely forwarded to him. The great fullness with which the court has gone into the consideration of the authorities, will make this necessary omission, perhaps, less regretted.

words, then they may afford strong reasons for adhering to it. If, on the other hand, they are opposed to it, then it is to be considered, whether they are so exactly in point, as to justify us in surrendering it, and following the conclusions, which they indicate. I shall confine my remarks chiefly to the direct devise; for although the other clauses in the will may furnish some illustrative lights, they do not seem to me strong enough to lead to any decisive conclusion. Two facts, however, are important to be mentioned; one is, that the testator professes an intention in the introductory part of his will, to dispose of all his worldly estate; and there is no residuary clause. So that he must have supposed himself to have made a final disposal of all his estate, in the specific devises. Another fact is, that the devisee, Philip Sisson, was a minor, unmarried and without children, at the time of making the will, and at the death of the testator.

Let us then proceed to the words of the will. The first part of the clause is, "I give and bequeath unto my loving grandson, Philip Sisson, &c., and to his male children, lawfully begotten of his body," &c. If the will had stopped here, there could not have been a doubt, either upon principle or authority, that it was the intention of the testator to create an estate in tail male in the devisee. In the first place, the words import a devise in presenti, and as the devisee had no children at the time of the will, if we construe the words, "his heirs male," &c., as words of purchase, and a "designatio personarum, in presenti," the devise becomes utterly void, from the want of proper objects in esse to take; so that the intention of the testator is defeated. On the other hand, if they are construed, as words of limitation, designating the succession of heirs to the estate, full effect is given to the words of the will, and the intention of the testator is accomplished. "Ut res magis valeat, quam pereat," the latter construction ought to be adopted. This is exactly in conformity to one of the resolutions in Wild's Case, 6 Coke. 17, which was decided by all the judges in England. "This difference," says my Lord Coke, "was resolved for good law; that if A. devises his land to B., and to his children or issues, and he hath not any issue at the time of the devise, that the same is an estate tail; for the intent of the devisor is manifest and certain, that his children or issues should take; and as immediate devisees they cannot take, because they are not 'in rerum naturâ'; and by way of remainder they cannot take; for that was not his intent, for the gift is immediate. Therefore, these such words shall be taken as words of limitation, scilicet, as much as children or issues of his body." Now, Wild's Case has constantly been admitted to be good law; and relied on in many subsequent cases. See Ginger v. White, Willes, 348; Seale v. Barter, 2 Bos. & P. 485, 494. The present case is even stronger than the resolution in

Wild's Case; for the words implied there, "lawfully begotten of his body," are here expressed. The whole difficulty is upon the succeeding part of the clause, "his male children, &c., and their heirs for ever, to be equally divided among them and their heirs for ever." Now, certainly, in construing the words of the devise, we must take the whole together; and as the former words may be enlarged by the latter, so they may also be restrained and qualified, or explained, by the latter. We are not bound to give an absolute technical sense to one part of the language, and then reject all other parts, as inconsistent with it. Lord Chief Justice Willes (and he was a very great judge), remarked with great force and sagacity, that "a mistaken notion has prevailed, that particular words in a will are as much technical words, as others are in a deed; and as necessarily pass such an estate in a will, as others do in a deed; as, for instance, that the words issue or children, where there are none at the time of the devise, do as necessarily create an estate tail in a will, as 'heirs of the body' do in a deed;" and he then added, that much confusion, in respect to the construction of wills, had been occasioned by this mistake. Id.

Now, the obvious sense of these words of the devise, taken in connexion, is, that all the male children of the devisee, Philip Sisson, are to have equal shares in the devised premises in fee simple. The devise is "to the male children and their heirs for ever," the very words, which are expressive of a fee simple; and the premises are to be equally divided among them (that is, among the male children) and their heirs, which are equally expressive of an equality of shares in the inheritance. If this be the obvious sense of the words, and the intention of the testator, the next inquiry is, whether it can be carried into effect by the rules of law. Certainly it can be, if we construe the whole clause to be a devise to Philip Sisson for life, with a contingent remainder in fee simple to his children, as purchasers, share and share alike. And it can be accomplished in no other manner. Upon this construction, the remainder would be contingent, until the devisee should have a male child born. It would then vest in him in fee, and open to let in any after-born children in the life of the father. See Right v. Creber, 5 Barn. & C. 866; Doe v. Perryn, 3 Term R. 484. In this way the inheritance would go exactly in the line, and in the shares, marked out by the testator.

Why, then, should not this construction be given to the clause? It is repugnant to no words in the will. It conforms to the apparent intention of the testator. It satisfies the rules of law. If, on the other hand, we construe the devise, as giving a fee tail to Philip Sisson, the whole of the words, succeeding the first part of the clause, are to be struck out of the will. They are repugnant to an estate tail in Philip Sisson. His male children cannot, if he takes an estate tail,

have a fee simple, and they cannot take equally. On the contrary, the eldest son and his issue are to take the whole. The only possible objection to it is. that if Philip Sisson should have children, all of whom should die in his life-time, leaving issue, the issue could not take under the will. But this is no more than what may occur in every other case of a lapsed devise.

But it may be said. that. in order to give this construction to the devise, the court is compelled to insert the words, "for life," after the words of devise to Philip Sisson; or, in other words. the court is compelled to introduce a qualification not found in the text. If this be admitted. still the posture of the case is not changed; for by the general rules of law, where the estate is indefinite, the party takes for life only, unless a different intention be clearly indicated. The testator has not said in terms, that Philip Sisson shall have an estate tail. If the court is to give such a construction to the devise, it must depart from the words used, and substitute for "male children." the words "heirs male of his body.". In either case the court is compelled to ascertain. what is not expressed. that is to imply a qualification or limitation upon language absolutely indefinite. Now, there is no rule of construction better founded in common sense. as well as in law, than the rule, that effect is to be given to all the words used. if they are sensible in the place. in which they occur. and if no apparent intention of the testator is thereby violated. Where words of devise are used, giving an estate to A., and then to B., no one would doubt, that the estate to A. was a mere life estate, although not so expressly limited. It results from a general rule of law. If the testator, instead of designating the second devisee by name. uses words. which are commonly a mere "descriptio personarum." the conclusion is equally natural, that the estate to A. is for life only. We are at liberty to abandon this conclusion only when there is an apparent intent to use the words, as words of limitation. and not as words of description. "Male children" are not, technically speaking, words of limitation. but of description of persons. The court ought. then, clearly to see, that they are used as words of limitation, before it abandons their common meaning.

On the other hand, the construction, that the will gives an estate tail to Philip Sisson, compels us to reject the whole of the superadded words, and to deprive them, not only of their ordinary meaning, but of all meaning. Now, it may be admitted. that where the testator has expressed two intentions, which are incompatible with each other, the general intention ought to prevail over the particular intention; otherwise. there would be a total failure of the devise from uncertainty or repugnancy. And, notwithstanding this rule. giving effect to a general over a particular intent. has been sometimes objected to, it seems to me plainly founded in common sense; and it is certainly

fully borne out by the authorities. Thus, an express devise for life has often, from the accompanying words, been held to carry a fee tail.[4]

If, then. looking solely to the terms of the will, we should be naturally, nay, necessarily led to the conclusion, that to give effect to all the words of the will, the devise ought to be construed, as an estate to Philip Sisson for life only, with a contingent remainder in fee to his male children; and in point of law, such a devise would be good and effectual; let us see, in the next place, whether the case is so bound up by authority, as to forbid a resort to this mode of interpreting it.

Now, it appears to me, that a careful survey of the authorities will demonstrate, not only that the court may, but ought to give this very interpretation to the devise. The authorities, which are apparently the other way, are all distinguishable, and leave the present case wholly unaffected in principle; or at least, if this be not universally true, the great mass of these authorities are consistent with it.

In the first place, as to the authorities in favor of the interpretation. 1 do not pretend to go over all of them; but 1 will mention some of those most directly in point, premising only, that some of them go to show, that where the first estate is given indefinitely, it may be restrained to a life estate; and others. to show the controlling effect of the superadded words. Indeed. where an estate is given indefinitely, the rule of law is (as 1 have already suggested) that it is to be deemed a life estate only, unless that construction be repelled by the context. In Luddington v. Kime, 1 Ld. Raym. 203, the words of the devise were, to A. for life. and in case he should have any issue male, then to such issue male and his heirs for ever, and if he should die without issue male, then to B., and his heirs for ever. And it was held. that A. took an estate for life only. with a contingent remainder in fee to his issue male. Here, indeed, the words for life were inserted; but as there was a devise over. those words alone would not have prevented A. from taking an estate tail. See Robinson v. Robinson, 1 Burrows. 38; Doe v. Laming. 2 Burrows, 1100, 1107; Pierson v. Vickars, 5 East. 548. The effective ground of the determination was upon the superadded words. "issue male and his heirs for ever.". Lord Raymond says, that the judges held. that the testator designed the words. issue male, to be a description of the person, "because the added) of the farther limitation to the issue. namely, and to the heirs of such issue for ever." In Ginger v. White, Willes, 348, the devise was

---

[4] See Burnet v. Coby, 1 Barnard. 367; Luddington v. Kime, 1 Ld. Raym. 203; Goodright v. Pullyn, 2 Ld. Raym. 1437. 2 Strange, 729; Wright v. Pearson. 1 Eden. 119; Measure v. Gee, 5 Barn. & Ald. 910; Robinson v. Robinson, 1 Burrows, 38; Doe v. Smith. 7 Term R. 531; Doe v. Cooper, 1 East, 229; Doe v. Featherstone. 1 Barn. & Adol. 944; Jesson v. Wright, 2 Bligh. 1, 51; Pierson v. Vickars, 5. East, 548; Seaward v. Willock, Id. 198.

to his son A. for life, and to his daughter S. for life, in case she lived unmarried, in common between them; but if the said S. shall marry, or die before A., then A. to have the sole use for life, and from and after the decease of the said A. and S., or other determination of their estate therein, to the male children of A. successively, one after another, as they are in priority of age, and to their heirs; and, in default of such male children, to the female children of A., and their heirs: and in case A. should die without issue, to W. in fee. It was held, that A. took an estate for life only, and the children, by reason of the devise over, an estate tail general by purchase. In Doe v. Laming, 2 Burrows, 1100, the devise was to A., and the heirs of his body lawfully to be begotten, as well females as males, and to their heirs and assigns for ever, to be divided equally, share and share alike, as tenants in common, and not as joint tenants. It was held that A. took an estate for life only, and that the heirs of her body were entitled to a fee as purchasers. The court relied upon the superadded words, as unequivocal, to show the intention of the testator. That case is as directly in point with the present, as can well be imagined. There were no words limiting the estate to A. for life. In one respect it was stronger; for the testator had used the words, "heirs of her body," which are peculiarly appropriate to an estate tail; and yet, upon the plain force of the superadded words, those words were withdrawn from their natural meaning, as words of limitation. In the present case, the words are "male children," which, as contradistinguished from "heirs of the body," naturally import words of description, and not words of limitation. See Doe v. Perryn, 3 Term R. 484. Unless, indeed, this case of Doe v. Laming, can be overturned, and it has never yet been overturned, I for one do not see, how the present case can be differently decided. In Doe v. Perryn, 3 Term R. 484, the devise was to A., the wife of B., for life, remainder to trustees, to preserve contingent remainders, remainder to the children of A. and B., and their heirs for ever, to be divided among them equally, and if but one child, to such child only and his heirs for ever: and for default of such issue, remainder over. A. and B., at the death of the devisor, had no child. It was held, that the estate was a contingent remainder in fee to the children, which on the birth of a child would vest in that child, subject to open in favor of after-born children. In Doe v. Collis, 4 Term R. 294, the devise was to the testator's two daughters, to be equally divided between them, namely, one moiety to one and her heirs, and the other moiety to the other for life, and after her decease to the issue of her body, and their heirs for ever. It was held, that the second daughter took an estate for life, with remainder to her children as purchasers in fee. In Burnsall v. Davy, 1 Bos. & P. 215, the devise was to A. and the issue of her body, as tenants in common, but in default of such issue, or if all die

under twenty-one years, without leaving issue, remainder over. A. never had any issue. It was held, that A. took for life with a contingent remainder to the issue as purchasers. In Crump v. Norwood, 7 Taunt. 362, the devise of gavelkind lands, stripped of unimportant circumstances, was to A. for life, and after his decease to the heirs of his body, and, if more than one, equally to be divided, and to take as tenants in common, and if but one, to such one only, and to his, her, or their heirs; and if A. dies without issue, or, leaving such, they should all die without attaining twenty-one years, remainder over. It was held, that A. took for life, with remainder to his children, as tenants in common in fee. In Doe v. Burnsall, 6 Term R. 30, the devise was to A., and to the issue of her body lawfully to be begotten, as tenants in common, if more than one, and, in default of such issue, &c., devise over. It was held, that A. took an estate for life only, and the limitation to her children was a contingent remainder to them as purchasers. In Gretton v. Haward, 6 Taunt. 94, the devise was to A., she paying my just debts, and after her decease to the heirs of her body, share and share alike, if more than one, and in default of issue to her own disposal. It was held, that A. took for life only, with a remainder in fee to all her children. In Doe v. Elvey, 4 East, 313, the devise was to A., and to the issue of his body lawfully begotten or to be begotten, his, her, or their heirs, equally to be divided if more than one; and in default of issue, &c., a devise over. It was strongly intimated by the court, that A. took an estate for life only; but it was unnecessary to decide the point. In Doe v. Jesson, 5 Maule & S. 95, the devise was to A. for life, and after his decease unto the heirs of his body, in such shares and proportions as A. should appoint, &c., and for want thereof to the heirs of the body of A., share and share alike, as tenants in common, and if but one child, the whole to such child only; and for want of such issue, to the testator's own heirs. It was held by the court of King's bench, that A. took an estate for life, and his children took an estate for life. We shall presently see, that this decision has been overturned by the house of lords upon its own circumstances, and principally because the plain import of the words heirs of body, was not overcome by the other superadded words, taking into consideration the devise over. Jesson v. Wright, 2 Bligh, 1. In Doe v. Goff, 11 East, 668, the devise was to A. and the heirs of her body, begotten or to be begotten, as tenants in common, and not as joint tenants: but if such issue should die before twenty-one, then to B. in fee. It was held that A. took an estate for life only, with remainder to all her children equally, as purchasers. This decision also has been overturned upon the same ground as the preceding. 2 Bligh, 1, 55, 57. In Right v. Creber, 5 Barn. & C. 866, the devise was to trustees, in trust to permit A. to receive rents for life, and from and after her death unto

the heirs of her body, share and share alike, their heirs and assigns for ever. It was held, that A. took an estate for life, and her children took as purchasers in fee; the estate to open to let in children born after the testator's death. In Jeffery v. Honywood, 4 Madd. 398, the devise was to A., and to all and every the children, whether male or female, of her body lawfully issuing, and unto his, her, and their heirs as tenants in common. It was held, that A. took for life only, with remainder to her children as tenants in common in fee. This case also is as nearly in point as can well be imagined. The estate to A. is indefinite; the remainder is to the children in fee, as tenants in common, and there is no devise over; which are precisely the leading circumstances in the present case.

Now, I believe, that no case whatsoever will be found to have decided, that where the devise has been in terms to children and their heirs, without any devise over, the parent shall take an estate tail. Where the words of the devise have been to "issue," or "issue of the body," and their heirs, or heirs of their bodies, it has often been held, that the parent took an estate for life only. In addition to the cases already cited on this point, are Backhouse v. Wells, 1 Eq. Cas. Abr. 184, 2 Strange, 731, 800; Mandeville v. Lackey, 3 Ridg. App. 352; Merest v. James, 1 Brod. & B. 484, 4 Moore, 327. The great struggle has been, where the words have been "heirs of the body," with superadded words. The constant argument has been, that these words have a technical, appropriate meaning, as words of limitation, to designate heirs in succession, and that, therefore, they are to be construed as such, unless the context clearly establishes, that they a.e used in a different sense, and as synonymous with children. Words inconsistent with the technical meaning are not, (it has been said,) sufficient to overthrow it; but there must be a clear expression of intention by the testator to use them as descriptive of particular persons, and not merely as descriptive of a succession of heirs.

Let us now proceed to examine some of the most important cases, which are favorable to the defendant; and it will be found, that they turn upon the same ground of reasoning. The first, and indeed that, which may now be deemed the great leading authority on this head, is Jesson v. Wright, 2 Bligh, 1. There, as we have seen, the devise was to A for life, and after his decease to the heirs of his body, in such proportions as he should by deed appoint; and, for want of such appointment, to the heirs of the body of A., share and share alike, as tenants in common; and if but one child, the whole to such child, and for want of such issue, to the heirs of the testator. The house of lords held, that under this devise A. took an estate tail. Lord Eldon founded his judgment upon the ground, that the words, to A. for life, followed by the words, heirs of his body, would give a fee tail, if the will had stopped

there. He argued, that the words might yield to a clear particular intent, that the estate should be for life only; and that such may be the effect of superadded words, or any expressions showing the particular intent of the testator; but it must be clearly intelligible and unequivocal. And he thought, that no such intent was clearly and unequivocally shown in the superadded words. On the contrary, he thought, that the words, "for want of such issue," showed, that the issue were to take in succession, that is, as heirs of the body, and not as a mere description of the persons, who were children; and that children alone were not the objects of the testator's bounty, but other issue. Notwithstanding, therefore, the other superadded words, "as tenants in common," &c., the general intent must prevail over the particular intent. Lord Redesdale put this judgment upon the ground, that the technical words, "heirs of the body," should have their legal effect, unless, from subsequent inconsistent words, it is very clear the testator meant otherwise. He thought by heirs of the body, the testator did not mean exclusively children, but that there were other objects of his bounty.

Now, it is material to state, that in this case the devise to the "heirs of the body," had no superadded words of limitation to them in fee; so that, if it meant children, they would take for life only. And Patteson, J., in Doe v. Featherstone, 1 Barn. & Adol. 944, which was decided expressly upon the authority of Jesson v. Wright, and as not distinguishable from it, took notice of the difference between it and Right v. Creber, 5 Barn. & C. 866, where there were superadded words of fee, to the words, "heirs of the body," which led to a different view of the intention. In Doe v. Featherstone, the devise was to the testator's son-in-law A., and B. his wife, for their lives and that of the survivor, and immediately after the survivor's decease, then to the heirs of the body of B. by A., to be equally divided among them, share and share alike. It was held, that B. took an estate tail, although there was no devise over in default of issue, as in Jesson v. Wright, the court thinking, that the general intention was not displaced by the inconsistent words. In Franklin v. Lay, 6 Madd. & Gel. 258, the devise was to A., and the issue of his body lawfully to be begotten, and to the heirs of such issue for ever; but if A. should die without leaving any issue, then remainder in fee over. It was held by the vice-chancellor, that A. took an estate tail, for the words, "leaving issue," could not be restrained to mean issue living at A.'s death, but meant an indefinite failure of issue, which would clearly indicate an estate tail in A. Now, it may be added, that "issue" is generally construed to include descendants, unless the contrary be the testator's intention. Sir William Grant recognised this, as the settled rule in

Leigh v. Norbury, 13 Ves. 339.[5]　But the reverse is the rule ,as to the word "children," for they are construed as descriptive of persons, or words of purchase, unless the contrary clearly appears to be the intention of the testator. The same remarks are applicable to King v. Melling, 1 Vent. 225, 232, 2 Lev. 58; Roe v. Grew, 2 Wils. 322; Shaw v. Weigh, 1 Eq. Cas. Abr. 184; King v. Burchell, 1 Eden. 424, 1 Amb. 379; Denn v. Puckey, 5 Term R. 299; Frank v. Stovin, 3 East, 548; Doe v. Applin, 4 Term R. 82; Attorney General v. Sutton, 1 P. Wms. 754; Stanley v. Lennard, 1 Eden, 87; and Doe v. Halley, 8 Term R. 5. In all of them there was a devise to A. generally, or for life, and to his "issue," with superadded words, and in default of issue, a devise over. The devise over is not always decisive, as we have seen; but it often has had a most material influence. In Goodright v. Pullyn, 2 Ld. Raym. 1437, 2 Strange, 729, the devise was to A. for life, and after his decease to the heirs male of the body of A., lawfully to be begotten, and his heirs for ever; but if A. should die without such heir male, then remainder over. It was held, that A. took an estate tail. The court mainly relied upon the ground, that the words heirs male are nomina collectiva, words of limitation, and not of purchase, and that the word "his" referred, not to heirs male, but to A. Wright v. Pearson, 1 Eden, 119, 1 Amb. 358, is precisely to the same effect. In Morris v. Ward, cited 8 Term R. 518, the devise was to A. for life, and after her decease to the heirs of her body, begotten or to be begotten, and to his or her heirs for ever, and for want of such heirs of the body to the testator's next heirs and their heirs for ever. It was held an estate tail in A. This case also turned upon the force of the words, "heirs of the body," in a technical sense. Measure v. Gee, 5 Barn. & Ald. 910, is precisely to the same effect. In Doe v. Smith, 7 Term R. 531, the devise was to A., and the heirs of her body, lawfully to be begotten, as tenants in common, and not as joint tenants; and in case A. shall happen to die before twenty-one, or without leaving issue, then devise over. It was held, that A. took an estate tail, upon the ground of effectuating the general against a particular intent, the general intent being, that the issue of A. should take in succession, evinced by the words, "heirs of the body," and also by the language leading to the devise over. Lord Kenyon, on that occasion, distinguished the case from Doe v. Laming by remarking, that there were no words of limitation superadded to the "heirs of the body" of A. Now, such words are in the case at bar. Doe v. Cooper, 1 East, 229,

where the words were "issue of A.," turned upon precisely the same considerations; as also did Pierson v. Vickars, 5 East, 548. In Bennett v. Tankerville, 19 Ves. 170, the devise was to A. for life without impeachment of waste, and from and after his decease to the heirs of his body, to take as tenants in common, and not as joint tenants; and in case of his decease without issue, devise over. It was held an estate tail in A. Here, again, the technical words, "heirs of the body," occurred without any superadded words, "to their heirs," and there was a devise over on a failure of issue. In Doe v. Goldsmith, 7 Taunt. 209, 2 Marshall, 517, the devise was to A. for life, and immediately after his decease to the heirs of his body lawfully to be begotten, in such parts, shares, and proportions, &c., as A. should appoint, and in default of such heirs of his body, devise over. It was held a fee tail in A., upon the same general grounds, as the preceding cases. Here, there was a devise over in default of issue; and there were no superadded words to the words, "heirs of the body" of A. In Doe v. Harvey, 4 Barn. & C. 610, the devise (of gavelkind land) was to A. for life, and from and after the determination of that estate to trustees to preserve contingent remainders, and from and after the decease of A. to and amongst all and every the heirs of the body of A., as well female as male, such heirs, as well female as male, to take as tenants in common; and for default of such issue, devise over. It was held a fee tail in A. The ground of the decision was the same as in the preceding cases, upon the technical force of the words, "heirs of the body," and the general intention, namely, that the intention was, that the estate should remain in the family of A., as long as the family should exist. This could be effected only by construing the words, "heirs of the body," to be words of limitation. If construed to be words of purchase, and all the children of A. should die in his life-time, leaving issue, the latter could not take. And besides; there being no superadded words of limitation to the words, "heirs of the body," it would be difficult to say, that the children of A. could take more than an estate for life. The decision of Jesson v. Wright had also manifestly great weight in this decision.

These are the most material cases, which can be urged as favorable to the defendants. They may be dismissed by remarking, that they all differ from the case at bar, in having the devise, after the estate to the first taker, to be in the technical words, "to heirs of the body," or "to the issue" of the first taker; and if there are superadded words, there is also a devise over on failure of issue. In the case at bar the devise is to Philip Sisson, and to his male children, not to the heirs of his body, or his issue; there are the superadded words, "their heirs for ever, to be equally divided amongst them;"

---

[5] See Roe v. Grew, 2 Wils. 322; Shaw v. Weigh, 1 Eq. Cas. Abr. 184; King v. Burchell, 1 Eden. 424; Denn v. Puckey, 5 Term R. 299; Frank v. Stovin, 3 East, 548; Doe v. Applin, 4 Term R. 82; Stanley v. Lennard, 1 Eden, 87; Doe v. Halley, 8 Term R. 5.

and there is no devise over. If, under such circumstances, the estate is construed to be an estate tail in Philip Sisson, then, as there is no devise over, and no residuary clause in the will, the testator has failed to do, what he expressly states his intention to be in the beginning of his will, to dispose of all his worldly estate. Indeed, the whole reasoning on which this class of decisions is founded, when rightly understood, applies with great force to the opinion, which I have already expressed, on the true interpretation of the present will. The leading ground is, that words, which have a known technical meaning, or general use, as words of limitation, indicating heirs in succession, shall not be presumed to be used in any other sense, unless there is clear and unequivocal evidence, that a different sense was absolutely intended. Inconsistent words used do not necessarily import such an intention; for the testator may still use the words to denote heirs in succession, and mean to accomplish other objects incompatible by law with that intention. Apply the same ground of reasoning to the present case. The word "children" is in a technical, as well as a general sense, used as a word of purchase, as a description of persons, and not as a word of limitation. See Doe v. Mulgrave, 5 Term R. 320; Seale v. Barter, 2 Bos. & P. 485; Ginger v. White, Willes, 348. If another meaning is sought to be forced upon it in a particular will, deflecting it from its general and appropriate sense, that must be made out by clear and unequivocal evidence. In the case at bar, no such unequivocal evidence exists. On the contrary, every part of this clause of the will reads consistently, and full effect is given to every word in it by adhering to the technical and general sense. A departure from that sense involves the rejection of important words in that clause, sensible in the place where they occur, and indicative of a legal intention.

There are stronger cases than the present, where the general sense has prevailed. In Oates v. Jackson, 2 Strange, 1172, 7 Mod. 439, the devise was to A. for her life, and after her death to my daughter B., and her children of her body begotten, or to be begotten by her husband C., and their heirs for ever. B. at the time of making the will had one child, and afterwards had three more. It was held, that B. took, as joint tenant in fee, with all her children. And Co. Litt. 9, was relied on, that a gift to B., et liberis suis et a lour heirs, is a joint fee to B. and his children. Now, whether it might not have been a more just construction of the will in 2 Strange, 1172, to have held it an estate to B. for life, with remainder in fee to her children, I do not stop to inquire. It is sufficient, that it was not held to be an estate tail in B. The case of Jeffery v. Honywood, already cited 4 Madd. 398, is still more direct, and is certainly far

more satisfactory. Crawford v. Trotter, 4 Madd. 361, leads in the same direction, as far as it goes. Upon the whole, I can find no case, which goes the length of establishing the correctness of the construction of this will contended for by the defendants; and to adopt it, would, in my judgment, be to overthrow the clear and positive intention of the testator. On the other hand, there are, as I think, decisive authorities in favor of construing the estate of Philip Sisson to be a life estate only, with remainder in fee to his male children, under circumstances far less strong than those belonging to the present case. And I would add, that, in all cases of this sort, if the intention be clear, no authorities, applicable to other wills, ought to preclude the court from carrying that intention into effect, if it can be done without disturbing the settled principles of law.

My opinion is, that the plaintiffs are entitled to recover, unless the warranty in this case is a rebutter or estoppel of their claim. This leads me to the consideration of the question of the effect of the warranty. If the statute of 4 & 5 Anne, c. 16, upon the subject of collateral warranty, has been adopted in Rhode Island, it puts an end to the question. In February, 1749, the legislature of Rhode Island passed an act, reciting in the preamble, that a committee had been appointed at a previous session to prepare a bill for introducing into the colony such of the statutes of England as are agreeable to the constitution, and to make a report of their doings, and that the committee had presented a report (reciting the report at large), and therefore enacted, "that all and every of the statutes aforesaid (that is, the statutes referred to in the report) be and they are hereby introduced into this colony, and shall be in full force therein, until the general assembly shall order otherwise." The report referred to begins as follows: "We the subscribers, being appointed to report, what statutes of Great Britain are and ought to be in force in this colony, do report as followeth, that the following statutes, namely, the statute of Merton concerning dower; the statute of Westminster the first, as far as concerns bail; Gloucester; Westminster the second, 'de donis conditionalibus'; first Henry the Fifth, ch. 5th, of additions; partitions in general; the statutes of Henry the Eighth, concerning leases, saving and excepting the last paragraph of the said statute; twenty-first of James First, ch. 16th, for limiting real actions; and that of thirty-second of Henry the Eighth, ch. 2; the statutes of James and Elizabeth, and all other statutes that concern bastardy, so far as applicable to the constitution of this colony, &c., &c.; the statute of twenty-seventh Henry the Eighth, commonly called the statute of uses;" and (after enumerating several other statutes in the same general way) adds "the statute of the fourth and fifth of Anne,

ch. 16, relating to joint tenants and tenants in common; that part of the statute of the —— of Anne, that subjects lessees that hold over their term against the will of the lessor, to the payment of double rent during the time they hold over," &c., &c. And then concludes, "All which statutes, we are humbly of opinion, have heretofore been, and still ought to be, in force in this colony." The language of this report is extremely loose and inaccurate. But it is observable, that the words descriptive of the particular statutes are not their exact titles, but rather those, by which they were commonly known; and where a part of the statute only is intended to be adopted, and a part excluded, that intention is expressed in positive terms.

In the Revision of 1767 (page 55), the introductory enactment is, "that all the statutes in this colony shall be held to, and governed by the statutes, laws, and ordinances of this colony, and such statutes of parliament as are hereinafter mentioned, that is to say," —and it recites the same statutes in the very terms of the report of 1749. The statute here described, as "the statute of the fourth and fifth of Anne, ch. 16th, relating to joint tenants and tenants in common," is entitled "An act for amendment of the law and the better advancement of justice." It contains a great variety of sections, among which are provisions for allowing double pleas, extending the statutes of jeofails, authorizing a view by juries, dispensing with attornments by tenants, regulating dilatory pleas, allowing a plea of payment after the day to bonds, and stay of proceedings on payment of principal and interest, fixing the competency of witnesses to nuncupative wills, providing for declarations of uses upon fines and recoveries after they are levied, limiting actions against persons beyond seas, regulating suits on bail bonds, providing against bars by collateral warranty, providing for costs to defendants in error, and finally, in the last (the twenty-seventh) section, for actions of account by one joint tenant or tenant in common, his executors or administrators, against another joint tenant, or tenant in common, his executors or administrator; and also an action of account against the executors or administrators of every guardian, bailiff, or receiver; neither of which lay at the common law. Com. Dig. "Accompt" B, D; Wheeler v. Horne, Willes, 208; Co. Litt. 172.

Now, it is not unimportant, that the committee in their report state, that the statute of Anne and the other statutes referred to, have heretofore been in force in the colony. And it would certainly require very strong language to induce the court to believe, that a statute professedly in "amendment of the law and for the advancement of justice," and which, in most of its provisions, was directly applicable to the colony, was not intended to be generally adopted. The words "relating to joint tenants and tenants in common," are descriptive of the statute generally, and do not import in the connexion, in which they stand, that the part, which relates to joint tenants or tenants in common, and no more, is or has been adopted. If it had been the intention of the committee or of the legislature, thus to restrain the adoption of the statute, the same language would have been used, as in other parts of the report, where such an intention existed. Thus, the statute of Westminster the first is adopted "so far as concerns bail"; the statute of 32 Hen. VIII., concerning leases, excepting the last paragraph; that part of the statute of —— Anne respecting tenants holding over, &c., &c. Indeed, it seems almost incredible, that the committee, or the legislature should have intended to adopt that part only of the twenty-seventh section of the statute, which gives an action of account between joint tenants and tenants in common, and yet have left out that part of the same section, which gives an action of account against the executors and administrators of guardians, bailiffs, and receivers. And yet this would be the inevitable result of giving a construction to the language of the report, which should consider the words as restrictive, instead of being descriptive of the statute. It would be far more incredible, that there should be an intention to adopt this comparatively unimportant part of the statute of 4 & 5 Anne, c. 16, to the total neglect and exclusion of the other numerous and infinitely more important provisions for the amendment of the law and the furtherance of justice contained therein. The doctrine of collateral warranties, for instance, which this statute cuts down, is one of the most unjust, and oppressive, and indefensible in the whole range of the common law; and, in a country like ours, would daily work the greatest public mischiefs. Collateral warranty is, as every lawyer knows, where the ancestor has made a warranty of land, which warranty, upon his death, descends upon the heir, whose title to the same land neither is, nor could have been, derived from the warranting ancestor. And yet, though no assets should descend to the heir from that ancestor, and though the heir's title to such land should be otherwise complete, he would be barred of his title by the warranty of his ancestor. Thus, a tenant for life by the curtesy might alien the land with warranty, and by this warranty, descending upon his son, might without assets bar him of his maternal inheritance. This was cured by the very statute of Gloucester (6 Edw. I. c. 3) referred to in the report, as to tenants by the curtesy, and by a later statute as to tenants in dower. But it remained a standing reproach upon law and justice, until the statute of 4 & 5 Anne applied the same rule to all other tenants for life. 2 Bl. Comm. 302, 303. Surely, this was a grievance of a far more weighty nature, than the mere defect of a remedy for an account between joint tenants and tenants in common, in cases where they had not been made bailiffs. It appears to me, therefore,

that as the language of the report, taken in connexion with the legislative enactment, is, that the "statutes of fourth and fifth Anne, ch. 16," are adopted, it would be a most unjustifiable interpretation for the court to say, that the chapter sixteenth was not adopted; but only a fragment of a single section of the statute. My opinion is, that the legislature adopted the whole statute, so far as it was, or could be, applicable to the colony.

This disposes of the question of warranty, and thus removes the only remaining ground against the plaintiffs' right to recover. I will only add, in reference to a point made at the argument, that the covenant of warranty, though it is deemed a personal covenant in this country, and may not authorize a recovery over of the value from the heir, if he has assets, in a warrantia chartæ, but only in an action of covenant; yet that does not prevent the covenant of warranty from operating as a bar to the title of the heir by way of rebutter, when it descends upon him from the warranting ancestor. See Doe v. Prestwidge, 4 Maule & S. 178.

The district judge concurs in this opinion, and judgment must be given accordingly.

---

SIX BARRELS OF DISTILLED SPIRITS (UNITED STATES v.). See Case No. 16,-294.