RHODE ISLAND HOSPITAL TRUST CO. *et al. vs.* CLARENCE H. BECKFORD *et al.*

APRIL 6, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This cause was begun by a bill in equity for the construction of certain parts of the will of Mary Hazard. It was brought in the superior court by the Rhode Island Hospital Trust Company, as trustee under the will and codicil of said Mary Hazard, deceased, late of Providence, and by the Rhode Island Hospital Trust Company and Charles B. Coppen, as coexecutors and cotrustees under the will of Charles F. Deacon, late of said city. Hereinafter the word "complainants" will mean only the latter,

the coexecutors and cotrustees. The respondents, a grand-nephew and two grandnieces of said Mary Hazard, are the only persons, known and in being, who have any financial interest in this cause, other than those interested under the will of Charles F. Deacon. A person was appointed by the superior court to represent contingent interests and interests of persons not in being or not ascertainable.

The issue between the parties is the proper construction of the fifth and sixth clauses of the will of Mary Hazard. The bill prays for a determination of the two following questions: "1. Who is entitled to the principal of the trust estate created under clause FIFTH of said will and payable after the death of Ida M. Hopkins? 2. Who will be entitled to the principal of the trust estate created under clause SIXTH of said will and payable upon the death or remarriage of Elizabeth Hazard?" The answers to both these questions depend upon identical considerations.

After the pleadings were closed, some testimony was taken concerning family history and probate matters. The cause, being then ready for hearing for final decree, was certified to this court for determination under general laws 1938, chapter 545, § 7.

Mary Hazard died January 10, 1929, leaving the will and codicil now before us, which were duly probated. The will is dated October 15, 1925. The codicil, which has no bearing on the questions in the instant cause, is dated November 22, 1927. With certain indicated omissions clause 5 of the will is as follows: "I give, devise and bequeath to the Rhode Island Hospital Trust Company, a corporation organized and existing under the laws of the State of Rhode Island the sum of Five Thousand ($5000) Dollars in Trust Nevertheless upon the following trusts:

"To hold, manage and control said trust estate herein created, . . . to apply and expend the net income for the benefit of Ida M. Hopkins of the City of Providence, . . . with authority and discretion in my said trustee . . . to draw upon the principal of said trust fund for any emerg-

ency requiring more than the amount realized from the income to provide for some necessity or need of the said Ida M. Hopkins.

"Upon the death of the said Ida M. Hopkins to pay over and deliver the principal of said trust estate or the balance thereof to the person or persons who *at that time* are entitled to the residue of my estate under and by virtue of the terms of this will, to be held by such person or persons in accordance with the provisions of the terms of this will thereto relating." (italics ours)

Clause 6 gives $20,000 to said Rhode Island Hospital Trust Company upon trust "to apply and expend the net income for the support, maintenance and benefit of Elizabeth Hazard of the city of Providence, widow of my nephew George C. Hazard, for and during her life and while she remains the widow of said George C. Hazard." This clause contains powers and provisions similar to those contained in clause 5. With the exception of the additional words "or remarriage" in the opening phrase of the last paragraph in clause 6, so that it reads: "Upon the death or remarriage of said Elizabeth Hazard", the rest of this clause is identical with the wording of clause 5.

In order to properly construe the above-mentioned clauses it is necessary to refer to clause 7, the residuary clause of the will. This clause gives the residue of the estate to two nieces of the testatrix, Helen Hazard Beckford and Grace Hazard Deacon, both married, share and share alike. These gifts are upon the "express condition" that the beneficiary in each instance "is living at the time of my (the testatrix's) death." In case Mrs. Beckford or Mrs. Deacon predeceased the testatrix, she bequeathed $20,000 to each surviving husband, Clarence L. Beckford or Charles F. Deacon, if living at the time of the testatrix's death. Such sum was to be taken from the share that Mrs. Beckford or Mrs. Deacon would have been entitled to, had she survived the testatrix. The remainder of each such share of the residue she bequeathed to the Rhode Island Hospital Trust Company

in a separate trust for the support, maintenance and benefit of Clarence Hazard Beckford, Helen Frances Beckford and Grace Estelle Beckford, children of Helen Hazard Beckford, until each should attain thirty years of age, subject to provisions for substitution of issue in case of deaths. By her codicil the testatrix directed that the trustee pay over the principal to each of Helen Hazard Beckford's children as he or she should attain the age of twenty-five years instead of thirty years as provided in the will.

Immediately after the dispositions and directions above summarized, which are carefully set forth in detail and with considerable necessary repetition in the residuary clause, the fifth paragraph of that clause is as follows: "And in case all the beneficiaries to whom the rest, residue and remainder of my estate is to be given as above set forth shall die before said estate is distributed I direct that my Trustee pay the part of my estate then remaining to my heirs at law."

The concluding paragraph of clause 7 reads: "And in this will the term 'issue' shall mean issue by blood only and not by adoption; and whenever distribution is to be made equally to children . . . it shall be per stirpes and not per capita."

It appears of record that on October 15, 1925, the date of the will, the heirs at law of the testatrix were two nieces, Helen Hazard Beckford and Grace Hazard Deacon. As already stated, the testatrix died January 10, 1929. The niece Helen Hazard Beckford predeceased the testatrix, leaving as survivors her husband, Clarence L. Beckford, and three children, Clarence Hazard Beckford, Helen Frances Beckford and Grace Estelle Beckford, all of whom survived the testatrix. In accordance with the provisions of clause 7 of the will, the husband, Clarence L. Beckford, received $20,000 out of the one half of the residue of the estate that the testatrix had bequeathed and devised to his wife, if she were living at the time of the death of the testatrix. The balance of such share of the residue then became subject to the trust

for the benefit of the above-named children, the respondents in this cause.

The other niece, Grace Hazard Deacon, to whom the testatrix devised and bequeathed the remaining one half of the residue of her estate, survived the testatrix. She died October 18, 1932, leaving a will which, after providing for the payment of her debts, gave the entire residue of the estate to her husband, Charles F. Deacon. He died February 24, 1937. By his will, he gave his estate to trustees for the benefit of various persons and institutions.

Ida M. Hopkins, the life beneficiary under clause 5 of the will, died August 26, 1933. The life beneficiary under clause 6, Elizabeth Hazard, is living.

The complainants admit that under any construction of the will in the matters before us for determination, the respondents are entitled to one half of the principal of the trust estate under clause 5. The real question at issue now is whether the parties claiming by, through, or under the testatrix's niece, Grace Hazard Deacon, the residuary beneficiary who survived the testatrix, and later died without issue, are entitled to the other half of the principal of that trust estate, or whether these respondents are entitled to such principal. The words "such principal" will hereinafter mean only this other half of the principal referred to.

It may be of assistance to set out at this point the contentions of the parties. The complainants, as coexecutors of and cotrustees under the will of Charles F. Deacon, who was the residuary beneficiary under the will of his wife, Grace Hazard Deacon, contend that the person or persons who would be entitled to the principal of the respective trust estates under clauses 5 and 6 of the will must be determined as of the time of the death of the testatrix, January 10, 1929, and not as of the time of the death of Ida M. Hopkins, as to the fund left in trust for her, and as of the time of the death or remarriage of Elizabeth Hazard, as to the fund left in trust for her.

The complainants argue that, upon the death of the tes-

tatrix, the right to such principal vested absolutely and irrevocably in Grace Hazard Deacon, who survived her, subject to the use of those funds by the trustee for the benefit of the life beneficiary. It is their contention that the words "at that time", in clauses 5 and 6 of the will, when read in connection with the phrase "are entitled", which is in the "indicative mood" and "refers to a fact and not a supposition", and with the further provision in the same sentence specifying in each instance that the fund is "to be held by such person or persons in accordance with the provisions of the terms of this will thereto relating", can only refer to the time of death of the testatrix, at which time Grace Hazard Deacon became entitled to one half of the residue of the testatrix's estate and to "half of any property which might later fall into the residue." Referring specifically to clause 5, they say that: "In order to push this trust fund out of Mrs. Deacon and those claiming under her, it would be necessary that the phrase 'are entitled' be changed to the phrase 'would be entitled if I (Mary Hazard) had then (at the death of Ida M. Hopkins) died.' Such is not the language, and not a fair meaning to be grafted upon the language used."

It is contended on behalf of the respondents that the person or persons entitled to the principal of the trust funds in question here are to be determined as of the time of death of Ida M. Hopkins, the life beneficiary in clause 5, and as of the time of death or remarriage of Elizabeth Hazard, the life beneficiary in clause 6, and not as of the time of the death of the testatrix. Addressing themselves to the phrase "at that time" in clause 5, they say that it "clearly refers to the death of Ida M. Hopkins, who died on August 26, 1933. Grace Hazard Deacon had died in the previous year on October 18, 1932. It is submitted that since Mrs. Deacon was not living at the date of the death of the life tenant, neither she nor those claiming through her were entitled to any interest in this trust fund."

The respondents, apart from the representative of per-

sons not ascertained or not in being, construe the gifts over in clauses 5 and 6 as contingent remainders, the beneficiaries thereof to be determined at the termination of the respective particular estates. They argue as follows:. "It is apparent also that it was the intention of the testatrix to give the trust funds in question to the respondents, if the two nieces had predeceased the life tenants."

They also quote the seventh paragraph of clause 7, as follows: "And in case all the beneficiaries to whom the rest, residue and remainder of my estate is to be given as above set forth shall die before said estate is distributed I direct that my Trustee pay the part of my estate then remaining to my heirs at law." They contend that this language likewise tends to show that the testatrix intended the respondents as her heirs at law to receive the trust fund under clause 5 in the event of the death of Grace Hazard Deacon before the distribution of the estate.

The representative of persons not ascertained or not in being reaches the same conclusion as the respondents but on a different theory. Upon consideration of the whole will, he finds that futurity is in the essence of the gifts in question. His position is that the right to one half of the principal of each of the trusts in clauses 5 and 6 vested in Grace Hazard Deacon conditionally at the time of death of the testatrix; that is, that such right vested in her subject to the condition subsequent that she would be alive when Ida M. Hopkins died, or when Elizabeth Hazard either died or remarried. His final conclusion is that, because Mrs. Deacon died before any of these events had occurred, "the heirs-at-law of Mary Hazard, as a class, are entitled to the Deacon half of the principal sum established by the fifth clause of her will, and will be entitled to the Deacon half of the principal sum established by the sixth clause thereof upon the death or remarriage of Elizabeth Hazard."

The fundamental rule in the construction of a will is to determine the intention of the testator as expressed in the particular will under consideration and to give effect to that

intention, if not in violation of law. As *Story, J.* said in *Sisson* v. *Seabury,* 1 Sumn. Rep. 235 at page 239, "the intention of the testator is the pole star to guide and govern the Court." This principle needs no further citation of authorities for it has been repeatedly stated and applied in our decisions.

Where the intention of the testator is not clearly apparent, certain other rules, also well established, are of assistance to the court in performing so delicate a duty as that of determining a testator's intention. Whether a testamentary gift vests in interest, either absolutely or conditionally, immediately on the death of the testator, or whether such vesting is contingent upon the happening of some future event, depends on the intention of the testator, which is to be ascertained by consideration of the entire will, if some particular clause or provision in question in the will does not make his intention clear. An intention to defer the vesting of a gift in remainder is not to be inferred in the absence of a *clear* intent on the part of the testator to that effect, for the law favors the vesting of a devise or bequest immediately upon the death of a testator. *Starrett* v. *Botsford,* 64 R. I. 1, 9 A. 2d 871. In the ordinary case it is also reasonable to assume that a testator intends to leave his property to those who are the natural objects of his bounty rather than to strangers.

In the instant cause, the will, which was evidently written by an attorney and not by a layman, is skilfully drawn and provides for a sequence of events that the testatrix could reasonably foresee. A careful examination of the whole will establishes certain basic facts which strongly tend to disclose the testatrix's intention.

First, excepting the provision for the payment of debts and taxes in clause 1, certain minor bequests in clauses 2, 3 and 4, and the bequests to the life beneficiaries in clauses 5 and 6, the testatrix shows a clear intention to devise and bequeath the residue of her estate to her two nieces, Mrs. Beckford and Mrs. Deacon, if living at the time of her

death; otherwise such estate, in whole or in part, was to be held in trust for the three children of Mrs. Beckford; the other niece, Mrs. Deacon, being childless.

Second, it is also clear that the testatrix did not intend to leave any part of her estate to the husbands of her nieces, except in so far as she expressly directed. In providing a liberal bequest for each of them out of the residue of her estate under certain conditions, she showed a manifest intention to exclude them from any further claim in such estate, if the wife of either predeceased her.

It may be well at this point again to quote the controlling language in clause 5, which is the same in clause 6, except that in the latter clause the life estate shall terminate upon the death or remarriage of the beneficiary. Therefore, whatever we say about clause 5 applies with equal force to clause 6. The language to which we refer is as follows: "Upon the death of the said Ida M. Hopkins to pay over and deliver the principal of said trust estate or the balance thereof to the person or persons who *at that time* are entitled to the residue of my estate under and by virtue of the terms of this will, to be held by such person or persons in accordance with the provisions of the terms of this will thereto relating." (italics ours)

Clause 5 makes no reference whatsoever either to the testatrix herself or to the time of her death. The only person therein named is the life beneficiary. To whom then, can the words "person or persons who at that time" in that clause possibly refer? Except when a term of art is in question, the words used by a testator will be taken in their literal and ordinary import, unless a contrary intention clearly appears in the will. As this court said in *Industrial Trust Co.* v. *Wilson,* 61 R. I. 169, at page 181, quoting from *Ogden, Petitioner,* 25 R. I. 373, it is *"the written expression* of the testator, taken in its natural sense and use, and applied to existing facts", that must control.

In the instant cause it is true, as complainants contend, that in clause 5 of the will the testatrix uses the verb "are

entitled" in the indicative mood. Perhaps the use of that verb in the subjunctive mood would have eliminated all ambiguity. Nevertheless, if the verb is taken in its natural sense and use in connection with its whole immediate context, which is dependent "Upon the death of said Ida M. Hopkins", and applying such meaning to other existing facts gathered from a reading of the whole will, it becomes clear that the testatrix first projected her thoughts to the time of death of Ida M. Hopkins, and then used language, as is frequently done, to speak of that future event as if it were in the present.

Again, if her language is clear that the gift over in clause 5 is to take effect at some definite time in the future, it must prevail, notwithstanding the rule of construction that a will ordinarily speaks as of the time of death of the testator. It is obvious that when she drew her will the testatrix was looking both to the time of her death and to events that might naturally occur after her decease. The careful and explicit manner in which she disposes of the residue of her estate in clause 7 clearly shows that she was looking into the future beyond the time of her death. This becomes quite obvious when we remember how, through a substantial bequest, she eliminates, under certain conditions, the respective husbands of her two nieces from any possible further claims under the will, and how solicitous she was to provide for the future welfare of the three children of her niece Helen Hazard Beckford, in whom she appears to have been deeply, if not mainly, interested.

When, in clause 5, the testatrix used the term "at that time", following the opening phrase "Upon the death of said Ida M. Hopkins", it is our opinion that she intended to refer and did refer to the time of death of the life beneficiary, Ida M. Hopkins. The meaning of that phrase, in its natural sense and use, when considered with other pertinent provisions in the will as a whole, leads clearly to such conclusion. We find nothing in the will now before us which, in our judgment, shows a contrary intention.

As to the gift over, in clause 5, upon the death of Ida M. Hopkins, of the principal of the trust fund for her benefit for life or the balance of such fund then remaining, we agree with the contention of the respondents that it was not vested in the persons who upon the death of the testatrix were entitled to the benefit of the residue of her estate but that the beneficiaries of it must be determined as of the date of the death of Ida M. Hopkins.

It is our conclusion, from all the pertinent language of the will now before us for construction, that it was the intent of the testatrix that this gift over should go to the person or persons who, at the time of the death of Ida M. Hopkins, would be entitled to the benefit of the residue of the estate of the testatrix, if the will took effect *at that time*. The result would be that on the death of the life beneficiary the legal or equitable title to the assets then constituting the principal of the trust estate for her benefit would vest in the respondents, not as heirs of the testatrix but as beneficiaries specifically named in her will.

This conclusion is in our judgment very strongly supported by the language, above quoted, of the fifth paragraph of clause 7 of the will now before us for interpretation. From that language it seems to us clear, by necessary inference, that the testatrix intended that if, when the time should come for the distribution of the principal held in trust under either clause 5 or clause 6 of the will and any of the beneficiaries under clause 7 should be living, they should be entitled to receive such principal.

If any child of Helen Hazard Beckford is under the age of twenty-five years, the share of such child should be added to the trust estate now held, for the benefit of such child, by the trustee under the will of Mary Hazard.

It is our further conclusion that the same principles and reasoning should be applied to the trust estate for the benefit of Elizabeth Hazard under clause 6 of the will. But it cannot be determined at this time what persons will be entitled to that trust estate upon her death or remarriage.

504

On April 15, 1942, the parties may present a form of decree, in accordance with this opinion, to be entered in the superior court.

*Perkins, Higgins & McCabe, William E. McCabe,* for complainants.
*Emile H. Ruch,* for respondents.
*Walter D. Harris,* guardian *ad litem.*