W. W. CAMPBELL et als. v. JACOB J. CRATER et als.

*Wills—Statute of Limitations.*

1. In the construction of wills, the meaning of the testator is to be gathered both from the text and context of the will.

2. Where the words of a will were, "I leave to my son, W. R. C., a tract of land (describing it) and certain negroes (naming them), that to his heirs, but the said W. R. C. to have jurisdiction over said land and slaves ;" *It was held,* that no estate whatever passed to W. R. C., when it appeared from the other portions of the will that it was the intention of the testator to leave his property to his grandchildren, and not to his children.

3. The provisions of The Code, allowing a *feme covert* to sue alone regarding her separate property, does not remove the disability of coverture, so as to allow the statute of limitations to bar her right of action.

4. When two or more disabilities co-exist, or when one disability shall supervene an existing one, the period prescribed within which an action may be brought, shall not begin to run until the expiration of the latest disability.

(*Lippard* v. *Troutman,* 72 N. C., 551, cited and approved).

This was a CIVIL ACTION, tried before *Boykin, Judge,* at Fall Term, 1885, of IREDELL Superior Court, upon the following case agreed between the parties:

1. That Percephal Campbell died in Iredell county in the year 1854, leaving a last will and testament, which was duly admitted to probate at the August Term, 1854, of the late Court of Pleas and Quarter Sessions for said county. A copy of this will is set out below. The widow, Sarah Campbell, died prior to testator, Percephal Campbell.

2. That Williams R. Campbell, the party therein named, was a son of the said Percephal Campbell, and who died on the ..... day of July, 1883, leaving the following named children and grandchildren, to-wit: James A. Campbell, aged 49 years, but who died on the ...... day of ........., 18..., leaving him surviving Mary I. Campbell, aged 26 years; W. W. Campbell, aged 23 years; Mamie Campbell, aged 14 years; Charles Campbell, aged 11 years; and Emma Campbell, aged 3 years; W. W. Campbell, aged 47 years; A. A. Campbell, aged 45 years, who intermarried with one Jennings, and was born January 11th, 1841; was married to said Jennings on the 14th day of October, 1860, and died February 11th, 1872, leaving her surviving the following children, to-wit: Preston, aged 19 years, Carrie, aged 17 years; Mollie, aged 15 years; A. W. Campbell, aged 39 years; Henry F. Campbell, aged 37 years; Mary E. Campbell, aged 33 years, now Puckett, was married before she was 21 years of age, and her husband is still living; S. P. Campbell, aged 31 years; Preston B. Campbell, aged 29 years; Alice C. Campbell (now Felts), aged 27 years, who intermarried with said Felts before she was 21 years of age, and her husband is still living.

3. That Williams R. Campbell sold and conveyed the land mentioned in the complaint to Joseph James, in fee simple, in the fall of 1854, and Joseph James sold and conveyed the same to Jacob Crater on the 22d day of September, 1856, in fee simple; that Jacob Crater went into the possession of the land im-

mediately after the date of the deed from James to him, and he and the other defendants have remained in the possession of the land ever since, claiming the absolute title thereto under the deed from Joseph James.

4. That this action was commenced on the 6th day of October, 1885. If the Court should be of opinion that the plaintiffs are entitled to recover the whole of the land described in the complaint, judgment shall be so entered, and if the Court shall be of the opinion that all the plaintiffs are not entitled to recover, but that a part of them are, then a judgment shall be entered for their proportional part of said lands as appears from this case, there being nine children of the said Williams R. Campbell. And if the Court shall be of the opinion that none of the plaintiffs are entitled to recover, then judgment shall be entered for the defendants.

Percephal Campbell's will was as follows:

In the name of God, amen:

I, Percephal Campbell, of the State of North Carolina, Iredell county, do this day make my last will and testament, being weak in body but of sound mind and memory, blessed be God for his mercy and blessings bestowed on me.

In the first place I give unto my wife, Sarah, all my lands and mills and machinery thereunto belonging, and likewise all my negroes and all my horses and wagons, and all my stock and household and kitchen furniture, and all notes and money that I now possess, during her lifetime or widowhood.

And I likewise appoint my son Percephal Campbell, Jr., and Milas Dobbins my lawful executors, and at her death to be divided, as follows:

*Item first.*—I give to my eldest son William Campbell's heirs, with what I have given him to his living, if living, his son Alford and his sister Thersy one hundred dollars each.

*Item second.*—My second son, Percephal Campbell, Jr., all my land on the North side of Hunting Creek and likewise big Isaac and Susannah, Marion and Canah.

*Item third.*—Son Theophilus M. Campbell I leave his lawful heirs three hundred acres of land adjoining Elijah Salmons, and four negroes, viz: James, Peter, Silvy and Andrew, when his heirs become of age, but for the said Theophilus M. Campbell to have no title nor claim to the said property.

*Item fourth.*—I leave to my son John R. Campbell five hundred acres of my land on the South side of Hunting Creek on the waters of Rocky Branch, and four negroes, that is: Nelson, Betty, Lee and Mirandy, that is to heirs. I likewise leave to my son Williams R. Campbell five hundred and fifty acres of land on the waters of Rocky Creek, including the house that I now live in, and likewise four negroes, Bryant, Frank, Burton and Rachael, that to his heirs, but for him the said Williams R. Campbell to have jurisdiction over the said negroes or land. My oldest daughter, Sarah Morgan, I leave her five negroes, that is: Hudley, Jane, Eli, Catherine and Emily. To the heirs of my second daughter heirs, that is, to John P. Parks, I leave him one dollar, Dabney W. Parks one dollar, Richard Parks one dollar and Theophilus C. Parks one dollar. To my third and youngest daughter, Frances Dobbins, I leave her my mills and all the machinery thereunto belonging, and likewise two hundred and fifty acres of land adjoining said mills, and a negro boy by the name of little Isaac, and a girl by the name of Mary.

In witness hereof, I hereunto set my hand and seal, November 1st, 1844.          PERCEPHAL CAMPBELL, [Seal.]

Take notice, that I leave my oldest daughter, Sarah Morgan, another negro girl by the name of Sarah, but take notice that her husband Bartlett Morgan to have no title nor claim to said negroes, but her to dispose of said negroes as she sees proper at her death.

In witness whereof, I set my hand and seal, November 1st, 1844.          PERCEPHAL CAMPBELL, [Seal.]

His Honor, upon a construction of said will, held that the plaintiffs were not entitled to recover any land whatever, and

that none of them were so entitled, and accordingly gave judgment for the defendants.

From this judgment the plaintiffs appealed.

*Messrs. M. L. McCorkle* and *T. B. Bailey*, for the plaintiffs.
*Messrs. D. M. Furches* and *John Devereux, Jr.*, for the defendants.

ASHE, J. (after stating the facts). The plaintiffs claim the land in controversy as devisees under the will of Percephal Campbell, who died in 1854. The defendants deny the title of the plaintiffs, and say they have had possession of the land with color of title for forty years.

Both parties claim title derived from Percephal Campbell. The defendants by a deed from Williams R. Campbell in 1854, to Joseph James, and a deed from him to Jacob Crater, on the 22d day of September, 1866.

The first question to be solved is: Did Williams R. Campbell take an estate in the land devised in "Item fourth" of the will of Percephal Campbell, or did the estate pass by the devise to the heirs or children of said Williams R. Campbell, to his exclusion. We are of the opinion the land was devised directly and absolutely to the children, for here the word *heirs* evidently meant children of the said Williams R. Campbell—but that he derived no legal estate whatever in the land by the will of his father. The clause in the will bearing upon the point is, " I likewise leave to my son Williams R. Campbell, five hundred and fifty acres of land on the waters of Rocky Creek, including the house that I now live in, and likewise four negroes, Bryant, Frank, Burton and Rachael, that to his heirs, but for him the said Williams R. Campbell to have jurisdiction over the said negroes or land."

In the construction of wills, the intention of the testator is the great object of inquiry; and to this object technical rules are, to a certain extent, made subservient.

The intention of the testator, to be collected from the whole, is to govern, provided it be not unlawful or inconsistent with the rules of law—4 Kent, 634—or as has been said, the intention is to be collected from the four corners of the will.

Looking at this will in all its parts and provisions, it must appear that the testator, for some reason, had no confidence in his sons generally, and therefore made the devises to their children. His son Percephal, in the same *Item*, is the only one of them to whom he devises land unequivocally. In the first *Item*, his bequest is to the *heirs* of his son William, naming his son and daughter as the objects of his bounty. In the third *Item*, he mentions his son Theophilus, and gives land and negroes to his heirs, but provides that Theophilus shall have no title nor claim to the said property.

In the fourth *Item*, he leaves land and negroes to his son John, but adds, *that is to heirs*, and in the same clause, he leaves to his son Williams, land and negroes, and after superadding the words, "*that to his heirs*," provides that Williams is to have jurisdiction over the land and negroes.

We think the words "*that to his heirs*," evidently express the intention of making the grandchildren the objects of his bounty. And the reason why the names of the fathers are mentioned in each *Item*, was to designate the more readily the different classes of his grandchildren, among whom he was intending to distribute his property. If he had intended to give the property claimed and bequeathed in the fourth *Item* to Williams, why say after using the words, *that to his heirs*, "but for him to have jurisdiction over the said negroes and land." This provision is totally inconsistent with any intention of giving Williams any estate in the land. It gives Williams no use of the land nor enjoyment of the profits, but simply jurisdiction, that is, the superintendence of the land and negroes, not for his benefit, but for that of his children, who were minors at the time of the testator's death.

If then, as we think, the devise in the fourth *Item* was to the children of Williams R. Campbell, the next question that arises

11

is, are the plaintiffs, as the devisees of Percephal Campbell, or any of them, entitled to recover in this action. The defendant says they are not, because he has had more than seven years' possession, with color of title.

The statutory limitation in such a case is, that seven years' actual adverse possession, with color of title, shall be a bar to all persons, except those who are laboring under any disability—such as infancy, and in that case, even after the expiration of the time of the limitation, they may bring their action within three years after full age, (The Code, §§141, 148), but it is provided by §149, that when two or more disabilities shall co-exist, or when one disability shall supervene an existing one, the period prescribed, within which an action may be brought, shall not begin to run until the limitation of the latest disability.

This last section can have no application, when there is a clear running of the statute for the seven years after the disability is removed, as when an infant attains his majority.

In this case, all the sons of Williams R. Campbell had attained their majorities more than ten years before the commencement of this action, in October, 1885. Percephal Campbell, the youngest of the sons, was 29 years old when his father Williams R. Campbell died, in July, 1883. He then must have been born in 1854, and arrived at 21 years of age in 1875. The statute then began to run against him, and he was barred before the action was commenced, and if he was barred, so likewise were his brothers, who were his seniors. It is true, the case states that James A. Campbell died, but without giving the date of his death, and we must assume that he died after his father, for it states that Williams R. Campbell died, leaving him and other children and grandchildren, but it can make no difference whether he was 49 years at his own death or that of his father, for he was old enough to be barred by the long adverse possession of the defendants, running from 1856, and if he was barred, of course the plaintiffs, who are his heirs-at-law, are likewise.

A. A. Campbell, another son, who died in 1872, at the age of 45 years, was barred, and also his heirs-at-law, who are plaintiffs, for the same reason.

This disposes of all the plaintiffs except the two daughters, Mary E. Puckett and Alice C. Felts. Both of these females married under the age of twenty-one years, and are still under coverture. We are of the opinion they are not barred—for admitting the action is to recover their separate estate, and they may sue without joining their husbands with them in the action by virtue of §178 of The Code, which declares, that "when the action concerns her separate property she may sue alone," but this does not subject them to the operation of the statute of limitations, for in *Lippard* v. *Troutman*, 72 N. C., 551, it was held, that the provisions of The Code allowing a *feme covert* to sue or be sued concerning her separate property, does not remove the disability of coverture, so as to allow the statute of limitations to bar a *feme covert's* right of action.

The right of suing alone is a privilege, which may be used for the advantage of a *feme covert*, but a failure to exercise this privilege cannot operate to her prejudice.

We are of the opinion there was error, and the plaintiffs Mary E. Puckett and Alice C. Felts are entitled each to recover one undivided ninth part of the land in controversy.

This, therefore, must be certified to the Superior Court of Iredell county, that a *venire de novo* may be awarded.

Error.                                                                    Reversed.