CHARLES McIVER et al. v. WINSTON McKINNEY et al.

(Filed 15 November, 1922.)

**1. Wills—Interpretation—Intent.**

The intent of the testator, as gathered from the words he has used in his will, will prevail in giving effect ·to the will, not so much depending upon what the testator intended to express as what he actually expressed therein, considering all its provisions in their related entirety; and while presumptions as to his meaning are usually subordinated to his intention, they are not to be disregarded as an aid to the discovery of such intention when such construction is reasonable and in accord with the language used.

**2. Same—Presumptions—Residuary Clause—Intestacy.**

Where reasonably permissible, the law presumes that it was not intended by a testator to die intestate as to any part of his property, and the law will accordingly, in proper instances, presume that by a residuary clause the intestate intended to dispose of the property that he has not disposed of specifically in other parts of his will.

**3. Same.**

In one item of his will a testator devised his home lands to his wife for life, therein not specifically designating those to take in remainder; and in another item thereof disposed of the residue of his estate, if any, to his wife and daughter, in equal proportions, share and share alike: *Held,* it was the testator's intent that the remainder of his estate devised in the first item should vest under the residuary clause.

**4. Same—Equity—Conversion.**

Where a testator directs that his real estate be sold and the proceeds first applied to the payment of his debts, and should any surplus remain, it should be divided among certain beneficiaries, such beneficiaries take the surplus as personalty under the doctrine of equitable conversion, subject to the law of descent applicable to property of that character.

**5. Same—Statutes—Husband and Wife.**

Where a daughter takes the lands of her father, after the death of her mother, as a residuary legatee under his will, but as personalty under the equitable doctrine of conversion, and then dies intestate, without child or the representative of such child, leaving a husband surviving, the daughter acquires her mother's interest, under the provisions of C. S., 137, and her husband, upon her death, is entitled to the estate as her personalty under the provisions of C. S., 7, subject to the rightful demands of creditors; and C. S., 137 (8), relating to instances where a married woman dies intestate, leaving a husband and a child, or the representative of such child, has no application. Public Laws of 1921, ch. 54.

Appeal by petitioners from *Harding, J.,* at April Term, 1922, of Surry.

Civil action, heard on an agreed statement of facts.

John M. Doss died leaving a last will and testament the two material items of which are as follows:

"Second: I give and devise to my beloved wife, Mary M. Doss, the tract of land on which I now reside, containing three hundred acres, more or less, bounded by the lands of Wesley Wooten, F. Parker, McKinney, and others, for her natural life in satisfaction of her dower and thirds in all my lands."

"Fifth: My will and desire is that all the residue of my estate (if any), after taking out the devises and legacies above mentioned, shall be sold and the debts owing to me collected, and if there should be any surplus over and above the payment of the debts, expenses, and legacies, that such surplus shall be equally divided and paid over to my said wife and daughter in equal proportions, share and share alike."

The action was instituted as a proceeding for partition of the land described in the second item of the will. The facts agreed are as follows: The petitioners and the defendants, Winston McKinney and W. E. McKinney, are the collateral heirs of the testator, John M. Doss, who died on 3 September, 1915; the defendants R. F. Saunders, Caroline Haymore, Charlotte Bowles, Louise Saunders, Fletcher Saunders, Lillian Jackson, Lucy Kirkman, J. W. Saunders, Robert Perkins, Virginia Perkins, and Mary Perkins are the collateral heirs of Mary M. Doss (widow of the testator), who died intestate on 14 May, 1918; and the defendant W. C. McKinney is the surviving husband of Sarah Doss McKinney (the only child of John and Mary Doss), who died intestate, without issue, 3 February, 1921, at the age of nineteen years. The land described in the petition as tracts 1, 2, 3, 4 is the land embraced in item two of the will. The testator devised to his daughter Sarah a tract in Yadkin County and three houses and lots in Mount Airy, which, with ten acres sold by her guardian and the land described in the second item of the will, was all the real estate owned by John Doss at the time of his death. The executor named in the will died before the testator, and the widow qualified as administratrix c. t. a. of John M. Doss on 7 September, 1915, and made a final settlement of her administration on 7 August, 1917. The personal property was more than sufficient to pay all the testator's debts and the funeral expenses. The widow and Sarah Doss resided on the home place, described in the second item, until the widow's death, and Sarah remained there until her marriage. With the exception of the ten acres referred to above, none of the testator's land has been sold. W. C. McKinney was appointed guardian of Sarah Doss McKinney on 25 November, 1918, and E. F. McKinney was appointed her administrator 1 September, 1921. On 17 May, 1918, L. P. Jones qualified as administrator of Mary M. Doss, and made his final settlement 23 May, 1919. W. C. McKinney was appointed administrator

*d. b. n., c. t. a.,* of John M. Doss 20 September, 1921; and as guardian of Sarah McKinney he took charge of her real and personal property and managed it up to the time of her death. The will was written by the executor named therein, who was not a lawyer.

The petitioners contend that the testator did not dispose of the reversionary interest in the land described in item two, and that upon the death of his daughter the title descended to them as heirs at law. The heirs of Mary M. Doss contend that the testator devised to her an undivided one-half interest in the land, that she held such interest as purchaser, and that they have acquired her title. W. C. McKinney contends that the fifth item of the will operates as an equitable conversion of the reversionary interest into personal property, that upon the death of Mary M. Doss her interest went to her daughter, Sarah Doss McKinney, and that W. C. McKinney, as husband of Sarah, acquired her interest.

The court adjudged that W. C. McKinney is entitled to the proceeds to be derived from the sale of the land, and appointed a commissioner to make the sale. The petitioners and the heirs of Mary M. Doss excepted and appealed. The land described in item two will be referred to as the "home place."

*T. W. Kallam, J. F. Hendren, and McMichael, Johnson & McMichael for petitioners.*
*J. H. Folger for the heirs of Mary M. Doss.*
*Carter & Carter for W. C. McKinney, appellee.*

Adams, J. In the second item of the will the testator devised the home place to his wife for her natural life, without therein disposing of the reversionary interest. The appeal therefore presents the direct question whether the provision in the fifth item operates as an equitable conversion into personal property of the interest remaining after the expiration of the life estate, for it is admitted that no other clause in the will affects such interest.

In *Sisson v. Seabury,* 1 Sumn., 235, Fed. Cas., No. 12, 913, *Judge Story* said: "The difficulty of construing wills in any satisfactory manner renders this one of the most perplexing branches of the law. The cases almost overwhelm us at every step of our progress; and any attempts even to classify them, much less to harmonize them, is full of the most perilous labor. *Lord Eldon* has observed that the mind is overpowered by their multitudes, and the subtility of the distinctions between them. To lay down any positive and definite rules of universal application in the interpretation of wills must continue to be, as it has been, a task, if not utterly hopeless, at least of extraordinary difficulty.

McIver *v.* McKinney.

The unavoidable imperfections of human language, the obscure, and often inconsistent, expressions of intention, and the utter inability of the human mind to foresee the possible combinations of events, must forever afford an ample field for doubt and discussion, so long as testators are at liberty to frame their wills in their own way, without being tied down to any technical and formal language. It ought not, therefore, to surprise us, that in this branch of the law the words used should present an infinite variety of combinations, and thus involve an infinite variety of shades of meaning, as well as of decision."

Nevertheless, it is generally conceded that in the construction of a will the cardinal purpose is to ascertain and give effect to the intention of the testator—not the intention that may have existed in his mind, if at variance with the obvious meaning of the words used, but that which is expressed by the language he has employed. The question is not what the testator intended to express, but what he actually expressed in his will, when all its provisions are considered and construed in their entirety. *Patterson v. Wilson,* 101 N. C., 586; *Francks v. Whitaker,* 116 N. C., 518; *Chewning v. Mason,* 158 N. C., 579; *Dunn v. Hines,* 164 N. C., 114; *Taylor v. Brown,* 165 N. C., 157; *McCallum v. McCallum,* 167 N. C., 310. Moreover, presumptions, while usually subordinated to the maker's intention, are not to be disregarded as an aid in the discovery of such intention. Hence, in determining the question whether the testator disposed of the reversionary interest in the home place we may consider the presumption that the testator intended to dispose of his entire estate. The law presumes that one who makes a will does not intend to die intestate as to any part of his property. *Speight v. Gatling,* 17 N. C., 6; *Jones v. Perry,* 38 N. C., 202; *Blue v. Ritter,* 118 N. C., 580; *Peebles v. Graham,* 128 N. C., 225; *Steadman v. Steadman,* 143 N. C., 351; *Allen v. Cameron,* 181 N. C., 124. We must therefore consider this presumption in connection with the fifth item of the will, which provides that the residue of the estate be sold and the surplus remaining after the payment of debts, legacies, and expenses be equally divided between the testator's wife and daughter. This is a residuary clause, which is to be construed so as to prevent intestacy, unless there is an apparent intention to the contrary. We are satisfied, after careful examination, that the will does not disclose an intention on the part of the testator to exclude from the residuary clause the reversion in the home place. The language is "all the residue of my estate," and the word "estate," as used here, denotes an interest in land or in any other subject of property. *Vann v. Edwards,* 135 N. C., 665; *Foil v. Newsome,* 138 N. C., 117. Even where the residuary clause is limited to personal property, it has been held that such clause operates as a limitation to the interest of the tenant for life, and passes it over as effectually

as if there had been an express limitation over of the specific thing. *Speight v. Gatling, supra; Saunders v. Gatlin,* 21 N. C., 86; *Hyman v. Williams,* 34 N. C., 94.

What, then, is the legal effect of the provision of the fifth item? We regard the unambiguous expression of the testator's "will and desire" that the property be sold as equivalent to his commanding an equitable conversion of the property not otherwise disposed of, including the reversion in the home place. "By equitable conversion is meant a change of property from real into personal, or from personal into real, not actually taking place, but presumed to exist only by construction or intendment of equity. 'Nothing,' it has been said, 'is better established than the principle that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted, and this in whatever manner the direction is given, whether by will, by way of contract, marriage articles, settlement, or otherwise; and whether the money is actually deposited, or only covenanted to be paid, whether the land is actually conveyed or only agreed to be conveyed. The owner of the fund, or the contracting parties, may make land money or money land.' By this and similar declarations, the judges do not mean to assert a solemn piece of legal juggling without any foundation of common sense; but simply to lay down the practical doctrine that for certain purposes of devolution and transfer, and in order that the rights of parties may be enforced and preserved, it is sometimes necessary to regard property as subject to the rules applicable to it in its changed and not in its original state, although the change may not have actually taken place." Bispham's Prin. Eq., sec. 307; 1 Story's Eq. Juris., sec. 573 *et seq.; Duckworth v. Jordan,* 138 N. C., 521; *Clifton v. Owens,* 170 N. C., 613. The right of a testator to effect his purpose by directing that money be employed in the purchase of land, or that land be sold and turned into money is unquestionable, and those who claim under a will directing such conversion must take the property in its converted character, as if the conversion actually took place at the time of the testator's death, unless some other time is designated in the will. *Brown v. Wilson,* 174 N. C., 639; *Benbow v. Moore,* 114 N. C., 270; *Conly v. Kincaid,* 60 N. C., 594; *Brothers v. Cartwright,* 55 N. C., 116; *Elliott v. Loftin,* 160 N. C., 362; *Clifton v. Owens, supra,* pp. 616-617.

From the application of these principles it follows that the equitable conversion into money of the reversionary interest took place when the testator died, and that the money to be derived from the sale was to be divided between the widow and the daughter "share and share alike." The daughter, who was the sole surviving heir and distributee, acquired

the interest of her mother (C. S., 137), and upon the subsequent death of the daughter intestate, her surviving husband (the defendant W. C. McKinney) was entitled to her personal estate, subject, of course, to the claims of her creditors and others holding rightful demands against her. C. S., 7; *Bank v. Gilmer*, 116 N. C., 701; *Colson v. Martin*, 62 N. C., 125. C. S., 137 (8), applies only in case a married woman die intestate, leaving a husband and a child, or the representative of such child. Public Laws of 1921, ch. 54.

The judgment of the Superior Court is
Affirmed.