Civil action for construction of will.
The record discloses that Mary B. Heyer, late of New Hanover County, died 1 January, 1934, leaving a holograph will, which is now the subject of controversy between or among the parties litigant. It was written in pencil, without the aid of counsel, found among her valuable papers, and has been duly probated in common form. Here it is: *Page 323 
"In the name of God, Amen.
"I, Mary B. Heyer, do on this the 15th day of September, 1930, make my last will and testament:
"I give to my brother, (On the margin) Judge Charles G. Bell ............... $2000 * "To my grand daughter "I give to my brother, and namesake Mary Bell William K. Bell ...................... 2000 Heyer 30,000 thirty "I give to my sister, thousand dollars. I Annie V. Buffinger ................... 2000 received from her father "To my niece Henry Heyer. When she Virginia A. Jardine .................. 2000 becomes 30 years old now * invested in Pub. Utilities. "To my faithful servant George Baldwin if still in my employ ......................... 1000 "To my faithful servant James Highsmith if still in my employ ......................... 1000
"The balance of my estate to my dear only child Mary Bell to be held in trust by her during her lifetime. Her husband to have no part in the management of my estate or this will becomes null void.
"At her decease I desire it to pass to my grandchildren to be divided in two parts, one half to her children and one half to my son's children when the youngest grandchild is 30 years old.
"If any legatee be not living at the reading of this will the legacy reverts to my estate. I appoint my daughter Mary Bell my executor. Mr. Hugh MacCrae overseer to this will that my wish as to the management be carried out.
MARY B. HEYER."
Adumbrative of the mind of the testatrix, the following background and setting was made to appear in the court below:
1. In 1913, Matthew J. Heyer died intestate, leaving him surviving his widow, the present testatrix, a son, Henry, and a daughter, Mary Bell. Under the law, these three took equal shares, a third each, in the intestate's estate, which amounted to approximately $300,000.
2. Henry, who was a lawyer, administered on his father's estate, and thereafter managed his mother's distributive share, commingling it with his own, which, after his death, became the subject of litigation between his mother and his widow.
3. Henry died in 1929, leaving him surviving his widow, Catherine Heyer, plaintiff guardian herein, and two children under fourteen years of age, plaintiff guardian's wards herein. At the time of Henry's death *Page 324 
he had in force life insurance aggregating $30,000, payable to his mother as beneficiary. This was duly collected and invested in certain public utility stocks, or rather entrusted to a New York broker for use in what appears to be a trading account.
4. In 1915, the daughter, Mary Bell, married Dr. Ernest S. Bulluck, and to this marriage five children have been born, represented herein, first by guardian ad litem, and then by their general guardian, R. D. Bulluck, brother of Dr. E. S. Bulluck.
5. The testatrix, while very fond of her grandchildren, disliked her daughter-in-law, and was not on speaking terms with her son-in-law. The former is not mentioned in her will and the latter is excluded from any part in the management of her estate.
With respect to the "marginal" bequest, the first in controversy, the court held that plaintiff's ward, Mary Bell Heyer, was entitled to $30,000 of the investments held by the testatrix in public utility stocks at the market value as of 1 January, 1934, plus any difference, if any, in cash necessary to make up such deficiency; the same to be held by the executrix, as trustee, until said minor reaches the age of thirty years, the income in the meantime to be paid to plaintiff guardian. Exception by plaintiff and defendants. The court further held "that this legacy is a vested demonstrative legacy not bearing interest." Exception by plaintiff.
Touching the residuary provision in the will, the next in controversy, the court held:
1. That the executrix should hold the same as trustee during her lifetime "in such way or manner as she sees fit in the full, unrestrained exercise of her discretion, with no limitations or restrictions placed thereon, except that her husband is not to participate in its management." Exception by plaintiff and defendants.
2. That the executrix took no personal interest in her mother's estate. Exception by defendants.
3. That the executrix was to manage the residuary estate, together with its accumulations and income, under the orders of the court, with such compensation as the court should allow, and to turn over the corpus to the grandchildren of testatrix, in equal proportions, per stirpes, "when the youngest grandchild becomes 30 years old." Exception by plaintiff and defendants.
From the judgment thus entered, the plaintiff and defendants appeal, assigning errors.
The cardinal principle in the interpretation of wills is to discover the intent of the testator, looking at the instrument from its four corners, and to give effect to such intent, unless contrary to some rule of law or at variance with public policy. Jolley v. Humphries, 204 N.C. 672,167 S.E. 417; Ellington v. Trust Co., 196 N.C. 755, 147 S.E. 286; Westfeldtv. Reynolds, 191 N.C. 802, 133 S.E. 168; Whitehurst v. Gotwalt,189 N.C. 577, 127 S.E. 582; Witty v. Witty, 184 N.C. 375, 114 S.E. 482; 28 R.C.L., 211. "The will must be construed, `taking it by its four corners' and according to the intent of the testator as we conceive it to be upon the face thereof and according to the circumstances attendant. We can derive but little help from adjudicated cases upon facts more or less different from those in this case, for hardly ever can the facts and the language be identical in any two cases. In the construction of a will, therefore, `Every tub stands upon its own bottom,' except as to the meaning of words and phrases of a settled legal purport. The object is to arrive at, if possible, the intention and meaning of the testator as expressed in the language used by him" — Clark, C. J., in Patterson v. McCormick,181 N.C. 311, 107 S.E. 12. This rule has been so often stated and reiterated that Brogden, J., in Clement v. Whisnant, 208 N.C. 167,179 S.E. 430, laconically remarked: "Of course, it is to be conceded that the intent of the testatrix should be the guide to courts. However, this process of probing the minds of persons long in their graves as to what they meant by words used when they were alive is, at best, no more than guesswork. Courts and text-writers have undertaken in some instances to make it highly scientific and specialized guesswork, but it remains guesswork nevertheless."
The same thought was expressed by Judge Story in Sisson v. Seabury, 1 Sumn., 235, Fed. Cas., No. 12, 913, in somewhat similar fashion: "The difficulty of construing wills in any satisfactory manner renders this one of the most perplexing branches of the law. The cases almost overwhelm us at every step of our progress; and any attempts even to classify them, much less to harmonize them, is full of the most perilous labor. Lord Eldon has observed that the mind is overpowered by their multitudes, and the subtlety of the distinctions between them. To lay down any positive and definite rules of universal application in the interpretation of wills must continue to be, as it has been, a task, if not utterly hopeless, at least of extraordinary difficulty. The unavoidable imperfections of human language, the obscure, and often inconsistent, expressions of intention, and the utter inability of the human mind to foresee the possible combinations of events, must forever afford an ample field for doubt and discussion, so long as testators are at liberty to frame their wills in their own way, without being tied down to any technical *Page 326 
and formal language. It ought not, therefore, to surprise us, that in this branch of the law the words used should present an infinite variety of combinations, and thus involve an infinite variety of shades of meaning, as well as of decision."
It is likewise established by the authorities that in determining this intent, the court should place itself as near as practicable in the position of the testator, and where the language is ambiguous, or of doubtful meaning, it should take into consideration his situation, how he was circumstanced, and what effect known forces had upon him at the time the will was executed. Raines v. Osborne, 184 N.C. 599, 114 S.E. 849;Ripley v. Armstrong, 159 N.C. 158, 74 S.E. 961; Smith v. Lbr. Co.,155 N.C. 389, 71 S.E. 445; Freeman v. Freeman, 141 N.C. 97,53 S.E. 620; Bunting v. Harris, 62 N.C. 11. The rule was stated inHerring v. Williams, 153 N.C. 231, 69 S.E. 140, by Manning, J., as follows: "The primary purpose of the courts, when a will is presented for construction, is to ascertain the intention of the testator from the language used by him. In ascertaining such intention, the entire will must be considered, and it is competent to consider the condition of the testator's family, how he was circumstanced, and his relationship to the objects of his testamentary disposition, so as nearly as possible to get his viewpoint at the time the will is executed."
Every expression, to be correctly understood, ought to be considered with a view to the circumstances of its use. Cole v. Fibre Co.,200 N.C. 484, 157 S.E. 859. "A word is not a crystal, transparent and unchangeable; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used," says Mr. Justice Holmes in Towne v. Eisner, 245 U.S. 418. General or particular meaning-content, therefore, may be imputed to words and phrases according to the purposes sought to be accomplished. S. v.Bank, 193 N.C. 524, 137 S.E. 593. And in order to arrive at the intention of the testator, "the court may reject, supply, or transpose words and phrases." Washburn v. Biggerstaff, 195 N.C. 624, 143 S.E. 210.
Again, it is settled that in this quest for the intention of the testator, resort must first and last be had to the language used by him.Herring v. Williams, supra; Pilley v. Sullivan, 182 N.C. 493,109 S.E. 359. General provisions are to prevail over minor and apparently inconsistent expressions (Raines v. Osborne, supra), but in the end the intention must appear from the text and context of the will itself. Williamsv. Best, 195 N.C. 324, 142 S.E. 2; Carroll v. Herring, 180 N.C. 369,104 S.E. 892; Campbell v. Crater, 95 N.C. 156. Greater regard is to be given to the dominant purpose of the testator than to the use of any particular words, yet the intent is to be deduced from the will as *Page 327 
written. Allen v. Cameron, 181 N.C. 120, 106 S.E. 484; Ralston v.Telfair, 17 N.C. 255.
Summing up the law on the subject in McIver v. McKinney, 184 N.C. 393,114 S.E. 399, Adams, J., delivering the opinion of the Court, said: "Nevertheless, it is generally conceded that in the construction of a will the cardinal purpose is to ascertain and give effect to the intention of the testator — not the intention that may have existed in his mind, if at variance with the obvious meaning of the words used, but that which is expressed by the language he has employed. The question is not what the testator intended to express, but what he actually expressed in his will, when all its provisions are considered and construed in their entirety," citing as authorities for the position: Patterson v. Wilson, 101 N.C. 586;Francks v. Whitaker, 116 N.C. 518; Chewning v. Mason, 158 N.C. 579;Dunn v. Hines, 164 N.C. 114; Taylor v. Brown, 165 N.C. 157;McCallum v. McCallum, 167 N.C. 310.
It all comes to this: When a will is presented for construction, the intention of the testator is to govern, and this is to be ascertained from the language used by him. Trust Co. v. Cowan, 208 N.C. 236,180 S.E. 87; Haywood v. Rigsbee, 207 N.C. 684, 178 S.E. 102; Scales v.Barringer, 192 N.C. 94, 133 S.E. 410; Gordon v. Ehringhaus, 190 N.C. 147,129 S.E. 187; Holt v. Holt, 114 N.C. 241, 18 S.E. 967.
Turning then to the will submitted for construction and looking at the first item in dispute, we find written upon the margin, opposite the general legacies, these words: "To my grand daughter and namesake Mary Bell Heyer 30,000 thirty thousand dollars. I received from her father Henry Heyer. When she becomes 30 years old now invested in Pub. Utilities." Marks appearing on the will indicate that this was intended to be inserted between the gifts to Virginia Jardine and George Baldwin. His Honor found, from an inspection of the original will, that it was not clear whether the punctuation after the word "Dollars" is a comma or a period. There is no question as to the validity of the bequest. The will is submitted for construction as probated.
The controversy arises over whether this "marginal" bequest is general, specific, or demonstrative.
A general legacy is one that is payable out of the general assets of the estate, such as a gift of money or other thing in quantity, and not so given as to be distinguishable from other assets of like kind. Shepard v.Bryan, 195 N.C. 822, 143 S.E. 835; Graham v. Graham, 45 N.C. 297; 28 R. C. L., 291.
A specific legacy is a bequest of a specific article, distinguished from all others of the same kind, pointed out and labeled by the testator, as it were, for delivery to the legatee, such as a particular horse, a piece of silver, or money in a certain purse or chest, or a particular corporate *Page 328 
stock, or a particular bond or other obligation for the payment of money.Shepard v. Bryan, supra. "If the thing bequeathed is, by the terms of the will, individuated so that it is distinguishable from all others of the same kind, it is a specific legacy" — Leaming, V. C., in Kearns v.Kearns, 77 N.J. Eq., 453, 76 A. 1042, 140 Am. St. Rep., 575.
A demonstrative legacy is a bequest of money or other fungible goods, payable out of or charged upon a particular fund in such a way as not to amount to a gift of the corpus of the fund, or to evince an intent to relieve the general estate from liability in case the fund fail, and so described as to be indistinguishable from other things of the same kind.Shepard v. Bryan, supra; 28 R. C. L., 292.
It is clear that the bequest in question is not specific. Smith v.Smith, 192 N.C. 687, 135 S.E. 855. This may be put aside.
Is it general or demonstrative?
It is inserted along with the general legacies in the will. Also it is observed the gift is "To my grand daughter and namesake Mary Bell Heyer 30,000 thirty thousand dollars . . . when she becomes 30 years old." The remaining expressions, we apprehend, were used merely to indicate the reason for the seeming preference or partiality on the part of the testatrix, and to explain what she had done with the insurance money. Having shared equally with her son and daughter in their father's estate, the testatrix no doubt thought it but meet, before dividing her own property, to return to Henry's daughter a sum equal to the insurance funds which she had received from him upon his death. It is not material that she preferred Henry's daughter over his son. There may be a reason for this, but whether there is or not, it is the testatrix' will we are interpreting. In any view of the matter, her "namesake" was unmistakably the special object of her bounty. Moreover, had the testatrix here intended a demonstrative legacy, it is highly improbable that she would have postponed its enjoyment until the legatee reaches the age of thirty years. She had seen great fluctuations in the value of utility stocks. The bequest is regarded as general rather than demonstrative.
The general rule in respect of interest on such legacies, when immediately payable and not promptly paid, is that they bear interest from the end of one year after the testator's death. Shepard v. Bryan, supra;Moore v. Pullen, 116 N.C. 284, 21 S.E. 195; Hart v. Williams, 77 N.C. 426; 28 R. C. L., 353. And in Swann v. Swann, 58 N.C. 297, it was said this general rule applies to pecuniary legacies to grandchildren, when it does not appear the testator stood towards them in the relation of parent or in loco parentis. Compare McWilliams v. Falcon, 59 N.C. 235. *Page 329 
However, this rule would not apply to the instant legacy because it is not required to be paid until the legatee "becomes 30 years old." The amount bequeathed, thirty thousand dollars, will be due and payable at that time, and it bears no interest in the interim. Croom v. Whitfield,45 N.C. 143; Ballantyne v. Turner, 59 N.C. 225.
Speaking to the identical question in Holt v. Hogan, 58 N.C. 82, it was said that while such a legacy is vested and will not be defeated by the death of the legatee prior to reaching the designated age, still the bequest would not bear interest except from the time it becomes due and should be paid.
We come next to the residuary clause, the second item in difference.
The judgment below is correct in decreeing that Mrs. Bulluck, the executrix, takes no personal interest in the residuum. Not only is the balance of the estate to be held by her "in trust," but her husband is to have no part in its "management." The testatrix knew that a trust estate would need to be managed rather than used, and she expressed the hope that Mr. Hugh MacCrae would see to it that her wish "as to the management" was carried out.
The primary purpose of the testatrix was to leave her property to her grandchildren, but not without some intervening active "management." She was not on friendly terms with either her daughter-in-law or her son-in-law. Both were excluded from any share in the estate. Knowledge that her daughter's financial interests were interlinked with those of her husband, together with her disdain for the latter, doubtless caused the testatrix to forego leaving any personal bequest to her "dear only child." Her son was dead. She could leave nothing to his widow. Her son-in-law was likewise non grata persona. He, too, was eschewed. The grandchildren thus became the primary objects of her bounty. To them, and to them alone, she intended to leave the residuum of her estate.
The argument on behalf of the executrix that she takes a life estate in the residuum was pressed before us with much learning and great earnestness. Several expressions lend color to this view, as well as the rule against disinheritance. Dunn v. Hines, 164 N.C. 113, 80 S.E. 410;Whitfield v. Garris, 134 N.C. 24, 45 S.E. 904; Clark v. Hyman, 12 N.C. 382; 28 R. C. L., 229. The overshadowing purpose of the will, however, seems to forbid such construction. Had the testatrix intended to give her daughter a life estate in the residuum, she would hardly have designated Mr. MacCrae "overseer to this will that my wish as to management be carried out." And the provision in respect of forfeiture, in case her son-in-law participate in its management, is likewise subversive of an intent to bequeath her daughter any individual interest therein. It would be necessary to write these expressions out of the will in order *Page 330 
to give the daughter a life estate in the residuum. Thompson v. Newlin,43 N.C. 32; 1 Page on Wills, sec. 814. While they may contain a modicum of distrust and prejudice, nevertheless they point unerringly to the testatrix' intent. The motive is not material so long as the purpose is clear (Hilliard v Kearney, 45 N.C. 221), and the end is lawful. Thompson on Wills (2d Ed.), sec. 219.
The judgment below is also correct in holding that Mrs. Bulluck is to manage the residuary estate, under orders of the court, with such compensation from time to time as the court shall allow. That portion of the judgment, however, which gives the trustee carte blanche authority to do "as she sees fit in the full, unrestrained exercise of her discretion" is unwarranted and will be stricken out. Mrs. Bulluck's trusteeship is not unlike others of similar kind. It is subject to the control of the court at all times. Woody v. Christian, 205 N.C. 610, 172 S.E. 210; Bank v.Edwards, 193 N.C. 118, 136 S.E. 342; Carter v. Young, 193 N.C. 678,137 S.E. 875; Bank v. Alexander, 188 N.C. 667, 125 S.E. 385; Fisherv. Fisher, 170 N.C. 378, 87 S.E. 113; Albright v. Albright, 91 N.C. 220;Jordan v. Jordan, 4 N.C. 292.
The income, as it accrues, is to be paid in equal proportions, first, to the respective guardians, parties hereto, then to the beneficiaries themselves, per stirpes, as they reach their majorities, and, when the youngest grandchild "is 30 years old," the corpus of the residuum is to be divided into two equal parts — one part delivered to the trustee's children and the other part turned over to her brother's children.
The trust is not a passive one, such as in McKenzie v. Sumner,114 N.C. 425, 19 S. S., 375, and must be kept active, to the end that the "marginal" legacy of $30,000 to Mary Bell Heyer may be paid "when she becomes 30 years old"; and further, that "the balance" may be "intrusted," managed and ultimately divided as the will directs. If for any reason the payment of the bequest to testatrix' "namesake" should be anticipated (in which event the plaintiff would receive only the present worth or present cash value of such legacy), or when it is paid, a situation may then arise which would justify the chancellor in closing the trust and relieving Mrs. Bulluck of the further duties of her trusteeship, if she so desire.
The cause will be remanded for judgment accordant herewith, the costs to be paid out of the trust estate.
Error and remanded. *Page 331