BERTHA M. SMITH WILLIARD, MERENDA SMITH HOLDER, EFFIE
  SMITH STAFFORD, PARTHELIA SMITH WILLIARD, W. H. SMITH
  AND JOHN R. SMITH v. EARLY WEAVIL AND ELWOOD SMITH,
  EXECUTORS OF WILLIAM YANCEY SWAIM, DECEASED.

(Filed 8 January, 1943.)

**1. Estates §§ 9a, 15: Wills § 33d—**

  A life estate, with remainder over to designated persons, may be created
  in personalty, at least personalty of a more permanent nature, directly
  by will, without the intervention of a trustee; and money comes within
  the rule.

**2. Estates §§ 9a, 15—**

  A bequest of property *"quae ipso usu consumuntur"* conveys the abso-
  lute title and is not a subject of a life estate.

**3. Same: Wills §§ 33d, 34—**

  Where testator provided by will that all of his property should be sold
  and go to his estate except certain realty allotted his widow for her
  support, and at the death of his widow his executors were directed to sell
  the land allotted for the widow's support "and the proceeds of which
  shall go to my estate and shall be equally divided between my eight chil-
  dren but my daughter Mary Jane shall have her part only for her lifetime
  and at her death her part shall go back to her brothers and sisters."
  *Held:* Mary Jane takes an absolute title in the general estate and her life
  estate is confined to the lands assigned to the widow and directed to be
  sold by the executors after the widow's death.

APPEAL by plaintiffs from *Grady, Emergency Judge,* at May Term,
1942, of FORSYTH.

This action was brought by the plaintiffs to recover from the estate
of William Yancey Swaim, deceased, trust funds alleged to have been
left to them by the will of Lewis L. Smith. They filed their complaint,
from which we summarize the facts alleged.

The will is as follows:

"WILL OF LEWIS L. SMITH: I, Lewis L. Smith of the State of North
Carolina, Forsyth County & Broad Bay township knowing the uncer-
tainty of Life and the certainty of Death I do herein make my last will
and testament on earth as follows, first my widow Tempy Smith if she
should be the longest liver of us too Shall have one cow, one hog and
all of my real estate on the North West side of the Creek as long as she
lives for her support and my Executors Shall see to Renting the Same,
and if there be any surplus over after her support it shall go back to my

estate. Second My Personal Property at my Death Shall be sold at. Public Sale and the Proceeds go into my Estate. *Third.* and the remainder of my Real Estate not included in allotment for my widow Shall be sold Either Public or Private in the Judgment of my Executors and at the Death of my Widow my Executors of this my will Shall Sell first mentioned land (widows allottment) and the Proceeds of which Shall go to my Estate and shall be Equally Divided between my Eight children but my Daughter Mary Jane Shall have her part only her life time and at her death her part Shall go back to her Brothers and Sisters, and I furthermore give my Executors the full Right and Power to Make all titles to said Lands & according to Law, and the Executors of this my last will Shall be my three sons W. Harrison Smith, John R. Smith, Elwood L. Smith they shall be Sole Executors of this my last will.

"This the Nineteenth Day of November A D Nineteen hundred and Fifteen

L L SMITH

Witnesses

J. M. McGUISTON

J. A. BOYLES"

L. L. Smith died 23 July, 1924, having disposed of all his real estate by deed, with the exception of the tract allotted to the widow. Mary Jane Smith Swaim, the daughter whose distributive share in the property of the decedent was limited to a life estate, with the remainder over to the other children named in the will, died on 27 May, 1927, leaving a will in which she devised and bequeathed all her property to her husband, William Yancey Swaim, naming him as executor.

It is alleged that during the life of Mary Jane Smith Swaim funds from the L. L. Smith estate, allegedly trust funds of the plaintiffs, to the extent of $3,450.00, had been paid to her by the executors of L. L. Smith's will, which funds had been deposited in the bank; that during the lifetime of the said Mary Swaim, her husband, W. Y. Swaim, by undue influence and by virtue of his marital relation, caused the said Mary Swaim to surrender possession of the trust funds to him; and that he became possessed of the remainder of the trust funds by virtue of his office as executor of her will, and acknowledged receipt as her executor of moneys aggregating $2,141.11.

It is further alleged that William Yancey Swaim used the trust funds for his own benefit from the time he obtained possession of them until his death on 30 April, 1939; and that he had never accounted for any part of them, or for the interest or other income derived therefrom, but had never by words or conduct repudiated the trust.

WILLIARD *v.* WEAVIL.

That portion of the lands allotted to the widow of L. L. Smith was sold by Smith's executors and converted into cash upon her death, which occurred 2 August, 1928, and certain of the real estate was not disposed of by the said executors until 23 April, 1934; that the said real estate was disposed of by the executors, pursuant to court order, by executing and delivering a deed of conveyance to the plaintiffs and Elwood L. Smith as tenants in common, and has never been fully converted into cash; that the executors of the will of Lewis L. Smith did not file a final report as such executors until 19 May, 1934.

William Yancey Swaim left a will, in which no provision was made for the payment of the trust funds to the plaintiffs and the defendant Elwood L. Smith.

Upon this the plaintiffs demanded judgment against the executors of William Yancey Swaim for the sum of $2,957.14, with interest thereon from 7 May, 1927 (the date of Mary Swaim's death), until paid, and for other and further relief.

The case came on for hearing at the 25 May, 1942, Term of Forsyth Superior Court, and defendants demurred *ore tenus* to the complaint for that it failed to state a cause of action; and thereupon the following judgment was rendered:

"This cause coming on to be heard before the undersigned Judge Presiding at this the May 25th 1942 Term of the Superior Court for Forsyth County, upon a demurrer *ore tenus* to the amended complaint filed in his cause, and the Court being of the opinion that the Will of Lewis L. Smith, which is incorporated by reference in the complaint, did not vest in Mary Jane Smith Swaim any life interest in the personal property referred to therein, and, therefore, the Court is of the opinion that the plaintiff has failed to state a cause of action for the reason that the matters and things alleged in the complaint upon which the cause of action is based are predicated upon the said Mary Jane Smith Swaim receiving merely a life interest in the personal estate of Lewis L. Smith under the Will aforementioned.

"Now, therefore, upon motion of counsel for the defendants, it is ORDERED, CONSIDERED AND DECREED that the demurrer to the complaint be and the same is hereby sustained and the plaintiffs' action is dismissed and the plaintiffs are taxed with the cost of this action.

"This 26th day of May, 1942.

HENRY A. GRADY,
*Judge Presiding."*

From this judgment the plaintiffs appealed, assigning error.

*Whitman & Motsinger for plaintiffs, appellants.*
*Wm. H. Boyer and Ingle & Rucker for defendants, appellees.*

SEAWELL, J.   It seems to be settled here that a life estate, with re-
mainder over to designated persons, may be created in personalty, at
least personalty of a more permanent nature, directly by will, without
the intervention of a trustee. *Smith v. Barham,* 17 N. C., 420.   Where
the bequest is of property *"quae ipso usu consumuntur,"* it comes within
the reason of the older law and the bequest conveys the absolute property
in the chattels. *Smith v. Barham, supra.*   But our decisions recognize
that bequests of money do not come within the rule pertaining to per-
sonal property which perishes with use—could not be put to the ordi-
nary use without being consumed; and such a bequest, therefore, does
not invest the first taker with the absolute property in the subject of the
bequest—in the absence of some expression in the will indicating a con-
trary intent.   The rule is, of course, subject to the stronger rule that the
intention of the testator controls. *Haywood v. Wright,* 152 N. C., 421,
67 S. E., 982; *Burwell v. Bank,* 186 N. C., 117, 118 S. E., 881.   Under
such a bequest, the holder for life is not permitted to invade the *corpus*
of the estate given him, but is confined to the use of the interest or
income therefrom. *Jones v. Simmons,* 42 N. C., 178; *Burwell v. Bank,
supra; Bryan v. Harper,* 177 N. C., 308, 98 S. E., 822; *In re Knowles,*
148 N. C., 461, 62 S. E., 549; *Holt v. Mfg. Co.,* 177 N. C., 170, 86
S. E., 1031.

If the plaintiffs could establish a bequest of that kind under the terms
of L. L. Smith's will, they would, under the allegations of the complaint,
have the right to pursue the property as trust funds, and recover the same
from the estate of Yancey Swaim.   But the will itself, taken with the
allegations in the complaint, presents serious obstacles to that result.

Smith required that all his personal property be sold at his death
and that the same should go into his estate, but at this point, the will
makes no disposition of it.   The record is silent as to whether he had
cash or moneys on hand at his death in addition to other personalty and
there is no presumption favoring either condition, except that it is
unlikely he should use the term "proceeds" in designation thereof.

Further on in the will (and we repeat for the purpose of clarity), it is
provided: *"Third.* and the remainder of my Real Estate not included
in allotment for my widow Shall be sold Either Public or Private in
the Judgment of my Executors and at the Death of my Widow my
Executors of this my will Shall Sell first mentioned land (widows allott-
ment) and the Proceeds of which Shall go to my Estate and shall be
Equally Divided between my Eight children but my Daughter Mary

Jane Shall have her part only her life time and at her death her part shall go back to her Brothers and Sisters."

Opposite interpretations have been made of this language by the plaintiffs and the defendants respectively. The plaintiffs urge that the phrase "shall be equally divided" refers to the whole property left by the testator. They point out that the will denotes a general scheme of distribution of all the property, whereby it is to be reduced to cash to go into the estate of the testator and there to be equally distributed, with the restriction that Mary Jane's share shall be for life only. They point out that the expression "shall be equally divided" comes at a point in the will just after the plan of reducing the property to cash has been expressed item by item; and they call to their aid the presumption against intestacy, which they argue will justify an expansion of the phrase denoting the bequest so as to include the entire property, or even a transposition of the language used, if necessary to that construction, and cite *McIver v. McKinney,* 184 N. C., 393, 114 S. E., 399, having to do with equitable conversion, and *Holmes v. York,* 203 N. C., 709, 712, 166 S. E., 889.

Defendants point out that this scheme was not subsequently followed by the testator; that the use of the term "proceeds" and the distribution thereof occurs in close connection with the sale of the lands by the executors and must be confined to its grammatical sense—to the connection in which it is employed—and that it is intended to affect, and does affect only the proceeds of the sales of land by the executors.

The lower court was evidently of the opinion that the apt use of the term "proceeds" as descriptive of the funds to be divided and the close juxtaposition of sale, proceeds and division in Item Three rather compel the adoption of the interpretation placed on the will by the defendants, and with this we are constrained to agree. We are not inadvertent to the presumption against intestacy, called to our attention by the plaintiffs; but this rule, however strong, is but a rule of construction, which must yield to the true intent of the testator when that can be ascertained. *Smith v. Barham, supra.* It does not authorize the Court to make a will or to add to a testamentary disposition something which, by reasonable inference, is not there, or to make intestacy impossible. *Alexander v. Alexander,* 41 N. C., 229, 231. It is the opinion of the Court that the adoption of the view urged by the plaintiffs would do too much violence to the language employed in the will. Our interpretation of the will, therefore, is that the restriction to a life estate of the share of Mary Jane Smith Swaim is confined to the bequest from the proceeds of the real estate directed to be sold by the executors, and not to any distribution of the estate generally.

Since the lands allotted to the widow were not sold by the executors until many years after the death of Mary Jane Swaim, and no part of the proceeds are alleged to have come into her hands; and since it appears that the testator, L. L. Smith, had sold and disposed of the other real estate prior to his death, and the purchase price had come into his hands not as proceeds from a sale by his executors and devoted to a special purpose under the will, but as his own money, subject to his complete control and disposition, free from any testamentary obligation; it follows that the plaintiffs are not entitled to pursue and recover the proceeds as trust funds from the estate of Yancey Swaim, if they could still be identified.

Under the facts alleged, the plaintiffs have failed to connect their claim with any property from the bequest upon which they base their right of recovery, and the judgment sustaining the demurrer is

Affirmed.