WAYLAND S. BARNES, INDIVIDUALLY AND EXECUTOR OF THE ESTATE OF MILDRED L. WILSON, PETITIONER v. KEN EVANS, MARIE STERLING, ELLEN NORTHEY O'NEAL, MARGARET POMEROY, VIRGINIA SMITH, PAT DALY, COLERAIN BAPTIST CHURCH, COLERAIN METHODIST CHURCH, BILLY GRAHAM EVANGELICAL ASSOCIATION, J. FRANK WILSON, DOROTHY WILSON, MARGARET STERLING, KAY STERLING ELLIS, RUTH BRISTOW, CAROL BARNES, UNIVERSITY OF NORTH CAROLINA AT GREENSBORO, AND ANY UNKNOWN AND UNNAMED HEIRS OF MILDRED L. WILSON, ET ALS., RESPONDENTS

No. 906SC37

(Filed 2 April 1991)

**Wills § 28.6 (NCI3d) — certificates of deposit as cash — intention of testatrix**

The phrase "remaining cash and bonds" as used by the testatrix in her will included her certificates of deposit because

BARNES v. EVANS

[102 N.C. App. 428 (1991)]

the greater weight of authority seems to be that the word cash includes certificates of deposit, the testatrix's intent as gathered from the four corners of the will seemed to indicate such a construction, and there is a presumption that one who makes a will does not intend to die intestate as to any part of her property.

**Am Jur 2d, Wills §§ 1265, 1266.**

**What passes under terms "cash," "cash on hand," or "cash assets" in will. 27 ALR3d 1406.**

Judge EAGLES dissenting.

APPEAL by respondents from judgment entered 4 October 1989 by *Judge Cy A. Grant* in BERTIE County Superior Court. Heard in the Court of Appeals 28 August 1990.

Mildred L. Wilson died testate in Bertie County on 31 October 1987. The 90-day inventory for her estate showed assets totaling $832,717.92, comprised of the following: (1) $1,424.42 in " 'cash,' coins, uncashed checks and traveler's checks"; (2) $88,072.58 in bonds; (3) $416,375.79 in certificates of deposit; (4) $33,144.52 in a checking account; (5) $24,453.66 in savings accounts; (6) household furnishings and a car valued at $7,080.00; (7) a farm with a tax value of $221,071.00; (8) residential property with a tax value of $32,696.00; and (9) approximately $8,500.00 in interest and other income received after death.

The executor of her estate petitioned for declaratory relief, asking the court to construe the will and to declare whether certificates of deposit should be treated as cash under the will. The will contained the following bequest (referred to by the trial court as a "devise"):

Item V

$5000.00 to Colerain Baptist Church

$2000.00 to Colerain Methodist Church

$5000.00 to Billy Graham Evangelical Assn.

$5000.00 to J. Frank Wilson, Knoxville, Tenn.

$5000.00 to Dorothy Wilson, Asheville, N.C.

$2000.00 to Mrs. Margaret Sterling

$2000.00 to Marie Sterling

$2000.00 to Kay Sterling Ellis

$2000.00 to Ellen Northey O'Neal

$2000.00 to Mrs. Ruth Bristow

$5000.00 to Mrs. Carol Barnes

The remaining Cash and Bonds I leave to the University of N.C. at Greensboro, N.C., to be put in a trust fund.

The specific amounts of money devised in this section totaled $37,000.00. The 90-day inventory showed that the estate had $59,022.60 in checking accounts, savings accounts, currency, coins, uncashed checks and traveler's checks.

The trial court found that the last sentence in Item V was not a general residuary clause but rather a specific devise consisting of cash and bonds. The court also found that the certificates of deposit were not cash and that the executor was to treat them as property not specifically devised. The certificates of deposit were available for the payment of debts and other expenses of the estate, and to satisfy the devises stated in the will. Remaining funds would then pass by intestate succession. The University of North Carolina at Greensboro appeals.

*Pritchett, Cooke & Burch, by W.L. Cooke, for petitioner appellee Wayland S. Barnes.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Charles J. Murray, for the State.*

*Baker, Jenkins & Jones, P.A., by Robert C. Jenkins and Robert E. Ruegger, for respondent appellee Lou Wilson Mason.*

WELLS, Judge.

The University of North Carolina assigns as error the trial court's ruling that decedent's certificates of deposit were among property that was not specifically devised. The trial court's ruling resulted in the certificates of deposit passing by intestate succession rather than passing to the University under the will. The issue here is whether the term "remaining cash and bonds" in Item V of the will includes decedent's certificates of deposit. We hold that "remaining cash and bonds" includes certificates of deposit.

While, as might be anticipated, the cases are not always consistent, the weight of authority seems to be that the word or

BARNES v. EVANS

[102 N.C. App. 428 (1991)]

term "cash" as used in a will includes bank accounts, both checking and savings and includes certificates of deposit. *See Annotation, "What Passes Under Terms 'Cash,' 'Cash On Hand,' or 'Cash Assets'" In Will*, 27 ALR3d 1406. It has been held that the basic principles which govern other types of bank deposits are applicable to certificates of deposit. 10 Am. Jur. 2d, *Banks*, Sec. 455. Under generally accepted rules of accounting, certificates of deposit are generally regarded as a specie of cash. *See Wilson, Kell & Bedford, Accountant's Handbook*, Sec. 10-2 (5th ed. 1970). *Black's Law Dictionary* defines "certificate of deposit" as "[a] written acknowledgment by a bank or banker of a deposit with promise to pay to depositor, to his order, or to some other person or to his order." *Black's Law Dictionary*, 205 (5th ed. 1979). Black's defines "cash" as "[m]oney or the equivalent; usually ready money. Currency and coins, negotiable checks, and balances in bank accounts. That which circulates as money." *Black's Law Dictionary*, 196 (5th ed. 1979).

Thus, it appears that the word "cash" is not such a technical one that it will have the same definite and precise meaning in all circumstances. In *Heyer v. Bullock*, 210 N.C. 321, 186 S.E. 356 (1936), Chief Justice Stacy aptly refers to Justice Holmes' insightful observation that "[A] word is not a crystal, transparent and unchangeable; it is the skin of a living thought and may vary greatly in color and content according to the circumstances . . . in which it is used." We cannot, therefore, resolve the use of the words "other cash," as used in Mildred Wilson's will, by resorting to a narrow, technical definition or interpretation. As instructed by Chief Justice Stacy in *Heyer, supra*, we must look for the meaning of these words according to the subject treated and the context in which they were used.

It is an elemental rule of construction that the intention of the testator is the polar star which must guide the courts in the interpretation of wills. *Pittman v. Thomas*, 307 N.C. 485, 299 S.E.2d 207 (1983), and cases cited and relied on therein. *See also Wachovia Bank & Trust Co. v. Bryant*, 258 N.C. 482, 128 S.E.2d 758 (1963).

The intent of the testatrix must be gathered from the four corners of the will and the circumstances attending its execution. *Pittman, supra*. "Circumstances attendant" include the relationship between the testatrix and the beneficiaries named in the will, and the nature and extent of the testator's property. *Pittman, supra*.

BARNES v. EVANS

[102 N.C. App. 428 (1991)]

In the case now before us, the testatrix was not survived by a spouse or lineal descendants. Her next of kin were all cousins, the record not disclosing their degree of kin. Ms. Wilson's will provided for her cousins, her gifts varying from small to quite large, one cousin receiving property of value well in excess of one hundred thousand dollars.

Ms. Wilson disposed of her entire estate, a circumstance which invokes another basic rule of construction of wills that in searching for the testatrix's intent, the courts are guided by the presumption that one who makes a will does not intend to die intestate as to any part of her property. *Wing v. Wachovia Bank & Trust Co.*, 301 N.C. 456, 272 S.E.2d 90 (1980). Ms. Wilson's will was carefully and, for a lay person, artfully drafted. It is not reasonable to infer that she intended that almost one-half of her considerable estate — nearly one-half million dollars in value — be left adrift in the unchartered and uncertain seas of intestacy.

We hold that Ms. Wilson's will must be construed to bequeath her certificates of deposit to the University of North Carolina at Greensboro. The judgment below is deemed modified to so provide. In all other respects, the judgment is affirmed.

Affirmed in part; reversed and modified in part.

Judge EAGLES dissents.

Judge LEWIS concurs.

Judge EAGLES dissenting.

I respectfully dissent. I would hold that on this record "remaining cash and bonds" does not include certificates of deposit.

The majority opinion rests primarily on the presumption against intestacy. Our courts have observed that the presumption against intestacy "is of varying force, according to the circumstances of the particular case, and cannot, of course, justify the Court in making a will for the testator." *Sutton v. Quinerly*, 228 N.C. 106, 108, 44 S.E.2d 521, 522 (1947). Here, I believe that the presumption against intestacy must yield to the language of the will. "[The presumption against intestacy], however strong, is but a rule of construction, which must yield to the true intent of the testator when that can be ascertained." *Williard v. Weavil*, 222 N.C. 492,

496, 23 S.E.2d 890, 893 (1943). I believe that the intention of the testator can be ascertained from the language in the will. Accordingly, it is not the place of this Court to rewrite the will.

I agree with the majority that the word "cash" standing alone does not have such a technical definition that it will have the same definite and precise meaning in all circumstances. However, on this record it is possible to ascertain Mildred L. Wilson's intent in using the phrase "remaining cash and bonds."

First, I note that the rule is that ordinary words must be given their ordinary meaning when construing wills. Both Black's Law Dictionary and Webster's Third New International Dictionary suggest that cash usually means "ready money." In construing a holographic will, "simple conversational words" must be given "their natural, ordinary, or popular meaning." *Anders v. Anderson,* 246 N.C. 53, 58, 97 S.E.2d 415, 419 (1957). Unlike the majority, I think that most people perceive a difference between a checking account or a savings account on the one hand and a certificate of deposit on the other, in terms of the ready availability of money. I am not persuaded that how certificates of deposit are treated in banking statutes or under accounting principles is relevant in this context. Also, other cases construing the word "cash" are at best a "meager aid in the ascertainment of the testator's intent." *Morris v. Morris,* 246 N.C. 314, 316, 98 S.E.2d 298, 300 (1957).

Additionally, the majority mistakenly focuses its inquiry on the word "cash" alone. The bequest reads: "The remaining cash and bonds I leave to the University of N.C. at Greensboro, N.C., to be put in a Trust Fund." Logic suggests that when a writer specifically mentions certain items, by implication she intends to exclude some other items. This principle is expressed in the maxim "expressio unius est exclusio alterius." Here, Mildred L. Wilson specifically mentioned her cash and her bonds. She did not enumerate her certificates of deposit. I can only conclude that she would also have listed her certificates of deposit had she intended to include them in the bequest.

Finally, I question the majority's conclusion that Mildred L. Wilson's will was so artfully drafted that she could not have failed to bequeath the certificates of deposit. Here, the testator's will was artful in that she used very definite and specific language. As the majority notes, Mildred L. Wilson provided for some of her cousins quite generously in her will. I do not find it unreasonable

to conclude that these family members are entitled to the portion of her estate not disposed of by her will.

Accordingly, I respectfully dissent.